IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 08-828-JAP |
| | ) | |
| ASKO APPLIANCES, INC. f/k/a AM | ) | **JURY TRIAL DEMANDED** |
| APPLIANCE GROUP, INC., ASKO | ) | |
| APPLIANCES AB, and DAEWOO | ) | |
| ELECTRONICS CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**LG ELECTRONICS, INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS DAEWOO'S COUNTERCLAIMS (COUNTS IV-IX),
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

OF COUNSEL:

Sunwoo Lee
Jon B. Crocker
Victoria D. Hao
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6801
Tel: (202) 955-3000

Karen A. Confoy
Erica S. Helms
STERNS & WEINROTH,
A Professional Corporation
50 West State Street, Suite 1400
Trenton, NJ 08608
Tel: (609) 392-2100

Dated: August 3, 2009
927156 / 33618

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Plaintiff
LG Electronics, Inc.*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| I. NATURE AND STAGE OF PROCEEDINGS | 1 |
| II. SUMMARY OF ARGUMENT | 1 |
| III. CONCISE STATEMENT OF FACTS | 1 |
| IV. ARGUMENT | 2 |
|     A. Pleading Standard for Inequitable Conduct is Easily Satisfied | 3 |
|     B. Pleading Standard for Inequitable Conduct Insufficient for Fraud Claims | 4 |
|     C. Daewoo Leverages Inequitable Conduct to Support Fraud Claims | 6 |
|     D. Dismissal of Counterclaims for Failure to Plead Valid Relevant Market | 6 |
|     E. Dismissal of Counterclaims is Appropriate Remedy | 9 |
| V. CONCLUSION | 9 |

# **TABLE OF AUTHORITIES**

## CASES

*Abraxis Bioscience, Inc., v. Navinta LLC*,
    2008 WL 2967034 (D.N.J.) .................................................................................................... 7

*Banks v. Wolk*,
    918 F.2d 418 (3d Cir. 1990) ................................................................................................... 7

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007) ................................................................................................... 7

*Barr Labs,, Inc. v. Abbott Labs.*,
    978 F.2d 98 (3d Cir. 1992) ................................................................................................. 8, 9

*Bell Atlantic Corp. v. Twombly*,
    127 S.Ct. 1955 (2007) ............................................................................................................ 7

*Beuff Enters. Florida, Inc. v. Villa Pizza, LLC*,
    2008 WL 2565008 (D.N.J. 2008) ........................................................................................... 8

*C.R. Bard, Inc. v M3 Systems, Inc.*
    157 F.3d 1340 (Fed. Cir. 1998) .............................................................................................. 3

*EMC Corp. v. Storage Tech Corp.*,
    921 F. Supp 1261 (D. Del. 1996) ........................................................................................... 3

*Hypodermic Prod. Antitrust Litig.*,
    2007 WL 1959225 (D.N.J. June 29, 2007) ............................................................................ 5

*Klein v. General Nutrition Co., Inc.*,
    186 F.3d 338 (3d Cir. 1999) ................................................................................................... 6

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) ................................................................................................... 5

*MedImmune, Inc. v. Genentech, Inc.*,
    427 F.3d 958 (Fed. Cir. 2005), *rev'd & remanded*, 549 U.S. 118 (2007) ............................. 3

*Multiform Desiccants v. Medzam, Ltd.*,
    133 F.3d 1473 (Fed. Cir. 1998) .............................................................................................. 2

*Nobel-pharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998) ..................................................................................... 4, 5, 7

*Rolo v. City Investing Co. Liquidating Trust*,
    155 F.3d 644 (3d Cir. 1998) ................................................................................................... 6

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
    742 F.2d 786 (3d Cir. 1984) ............................................................................................. 5

*Venetec International, Inc. v. Nexus Medical, LLC*,
    541 F. Supp. 3d 612 (D. Del. 2008) ................................................................................... 3

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................................... 4

*Walker Process Equip., Inc., v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965) ............................................................................................... 3, 4, 5, 7

## RULES

Fed. R. Civ. P. 9(b) .......................................................................................................... 4, 5

Fed. R. Civ. P. 12(b) ........................................................................................................ 7, 8

This is a patent infringement action between direct competitors. Plaintiff LG Electronics, Inc. ("LG") alleges that defendants are selling "knock-offs" of patented LG designs for washing machine technology and have willfully infringed the five asserted U.S. patents.

## I.   NATURE AND STAGE OF PROCEEDINGS

In an Opinion entered on June 23, 2009, "[t]he Court finds that Daewoo's efforts to contest service can be best characterized as an intentional, vexatious attempt to evade service, if not avoid it entirely" (D.I. 66 at p.8). Counsel for Daewoo subsequently accepted service, and promptly filed an Answer (D.I. 69).

Daewoo Electronics, Corp. ("Daewoo") now presents an Amended Answer (D.I. 80) in which it adds an Eighth Affirmative Defense for Inequitable Conduct, as well as allegations of intentional fraud, misrepresentation, and seven new counter-claims to support violations of federal anti-trust, state and common law.

## II.   SUMMARY OF ARGUMENT

Plaintiff LG responds to the Amended Answer pursuant to Rule 12(b)(6) seeking adherence to the heightened pleading requirements of Rule 9(b) for allegations of fraud. Daewoo's reliance upon allegations of inequitable conduct also does not meet the higher threshold tests for fraud under the federal anti-trust and state unfair competition laws. Further, Daewoo fails to properly define the relevant market.

## III.   CONCISE STATEMENT OF FACTS

A sampling of the allegations found within Daewoo's Amended Answer include:

28. LGE is attempting to enforce patents that have been procured by **fraud** on the USPTO.

This bald assertion, and legal conclusion, is then followed by truly formulaic pleading that repetitiously alleges fraud in the prosecution of the asserted patents. Paragraphs 41, 47, 50, 60, 62, 71, and 80 follow this pattern:

> ##. The deliberate and intentional failure to disclose the material prior art to the USPTO materially affected allowance of the '___ Patent in that one or more claims of the '___ Patent would not have been granted (at least in their present form) but for the **fraud**.

Upon this factual basis, the counterclaims extend the allegations across a multitude of state and common law violations, including the same fraud, as well as misrepresentation:

> 85. LGE had specific intent to monopolize a relevant market or submarket and engaged in anticompetitive and exclusionary conduct, including seeking to enforce its **fraudulently** procured patents, to stifle competition and create, maintain, and/or enhance its monopoly power.
>
> 128. LGE's conduct in **fraudulently** procuring one or more patents and then threatening and attempting to enforce one or more patents that it knew were invalid in an attempt to monopolize a market or submarket violates the DCAA.
>
> 138. By its conduct, LGE **misrepresented** that its goods have the approval and certification of the USPTO that were, in fact, procured by **fraud** and thus invalid.
>
> 142. LGE's **fraudulent** and deceptive conduct rooted in the District of Columbia and elsewhere as detailed above (paragraphs 28-104), including **misrepresentations**, threats, and other efforts to enforce **fraudulently** procured and knowingly invalid patents, constitute common law unfair competition.
>
> 150. LGE made false representations about material facts as detailed above, including by committing **fraud** on the USPTO, procuring patents by **fraud**, **misrepresenting** the validity and enforceability of those patents, making threats, and filing this lawsuit (*see, e.g.*, paragraphs 28-104).

## IV. ARGUMENT

Daewoo's amendment to add an inequitable conduct defense is only surprising in that it was missing from the original Answer. Truly, this defense appears so often in patent litigation that the Federal Circuit has labeled the strategy "a plague" on the legal system. *Multiform Desiccants v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998).

2

**A. Pleading Standard for Inequitable Conduct is Easily Satisfied**

The Federal Circuit has repeatedly observed "the ease with which routine patent prosecution may be portrayed as tainted" under inequitable conduct doctrines: "it is notable that in the usual course of patent prosecution many choices are made, recognizing the complexity of inventions, the virtually unlimited sources of information, and the burdens of patent examination." *C.R. Bard, Inc. v M3 Sys., Inc.* 157 F.3d 1340 (Fed Cir. 1998), *citing Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990).

In this district, patent owners have unsuccessfully argued that for inequitable conduct, Rule 9(b) particularity requires pleading how the withheld information is material to the prosecution of the patent and to identify the facts establishing deliberate intent. *See, Venetec Int'l, Inc. v. Nexus Medical, LLC,* 541 F. Supp. 3d 612, 619 (D. Del. 2008)("Therefore, pleadings that disclose the name of the allegedly withheld relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)," *citing EMC Corp. v. Storage Tech Corp.,* 921 F. Supp 1261, 1263 (D. Del. 1996)). As an Inequitable Conduct Defense is easily plead, therefore not easily dismissed, it is not challenged here.

Consequently, allegations of inequitable conduct continue to be popular among accused infringers, such as Daewoo. Recently, however, the inequitable conduct problem has been further compounded by the attempt to assert anti-trust claims arising from the same inequitable conduct allegations. *See generally, MedImmune, Inc. v. Genentech, Inc.,* 427 F.3d 958 (Fed. Cir. 2005), *rev'd & remanded,* 549 U.S. 118 (2007.) *See also, Walker Process Equip., Inc., v. Food Mach. & Chem. Corp.* 382 U.S. 172 (1965) *hereinafter, "Walker Process").*

3

**B. Pleading Standard for Inequitable Conduct Insufficient for Fraud Claims**

Just as Daewoo does here, after taking advantage of the generally lax pleading requirements for inequitable conduct, the accused infringer realleges and incorporates by reference the same underlying facts to support claims that usually hold much stricter pleading requirements, such as those for *Walker Process* anti-trust claims, and their state and common law equivalents. This pattern is clearly evidenced from examination of Daewoo's counterclaims which expressly make reference to their Eighth Affirmative Defense, which are their allegations of inequitable conduct, for their support.

First, "like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of Fed. R. Civ. P. 9(b)." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003)(claims that are "grounded in fraud" or that "sound in fraud" are subject to Rule 9(b)).

Second, following the Federal Circuit, "*Walker Process* fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct." *Nobel-pharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1070 (Fed. Cir. 1998)("*Nobel-pharma*").

> In *Norton v. Curtiss,* 57 C.C.P.A. 1384, 433 F.2d 779, 792-94 & n. 12, 167 USPQ 532, 543-45 & n. 12 (1970), our predecessor court explicitly distinguished inequitable conduct from "fraud," as that term was used by the Supreme Court in *Walker Process. Nobel-pharma* at 1069.

Third, further relying on *Norton*, the Federal Circuit found that the unique blending of equity we know as inequitable conduct further fails to satisfy the elements of common law fraud:

> The court then contrasted such independently actionable common law fraud with lesser misconduct, including what we now refer to as inequitable conduct, which "fail[s], for one reason or another, to satisfy all the elements of the technical offense." *Norton,* 433 F.2d at 793, 167 USPQ at 543. *Nobel-pharma* at 1070.

4

Due to the higher threshold requirements for *Walker Process* or common law fraud, as compared with the relatively low burden for inequitable conduct, it is inappropriate to allow the general averments for one to rise to the level of the other. Stated differently, the pleading standard for *Walker Process* or common law fraud claims are not reduced to a lower common denominator simply because the accused infringer includes an inequitable conduct defense.

Directly on point, where an accused infringer alleges no more than the omission of a prior art reference, the elements necessary to plead fraud have not been met:

> Therefore, for an omission such as a failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice. *Nobel-pharma* at *1071*.

While the Federal Circuit finds anti-trust counterclaims to be within its exclusive jurisdiction, when an accused infringer brings additional state and common law claims relying upon this Court"s supplementary jurisdiction, further analysis is required.

Although the Third Circuit instructs courts to liberally construe antitrust claims, a distinction can be made regarding allegations of fraud. *In re Hypodermic Prod. Antitrust Litig.*, 2007 WL 1959225, at *6 (D.N.J. June 29, 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 228 (3d Cir. 2004) (distinguishing the "short and concise statement" standard of Rule 8(a), generally applicable to antitrust claims, from the heightened "particularity" standard of Rule 9(b), applicable to antitrust claims sounding in fraud). From *Lum* at 223-224:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). **Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."** *Id.* (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of

5

alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). **Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.** *See Saporito,* 843 F.2d at 675; *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658-59 (3d Cir.1998); *Klein v. General Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir. 1999). (emphasis added).

### C. Daewoo Leverages Inequitable Conduct to Support Fraud Claims

Daewoo makes 15 separate allegations of "fraud" repeated among six counterclaims within paragraph numbers: 28, 41, 47, 50, 60, 62, 71, 80, 85, 128, 138, 142 (twice), and 150 (twice). (Note, paragraph identification is complicated by a drafting error causing the paragraph numbering to skip from 50 to 73 on page 22 of Daewoo's Amended Answer (D.I. 80), then continue sequentially to paragraph 77, before dropping back to paragraph 51 on page 23, and consistent thereafter. The paragraphs are not simply misplaced, as the use of paragraphs numbered as 73-77 then occurs again on pages 28-29, but with different content.

Daewoo's reliance upon, and lack of support for each usage of "fraud" is further multiplied by the first paragraph of each of counterclaims IV through VIII, which "realleges and incorporates herein ... the facts asserted in support of the Eighth Affirmative defense" (the Eighth Affirmative Defense sets forth the inequitable conduct allegations) thus making each counterclaim completely intertwined and consistently deficient.

Plaintiff brings this motion seeking substantiation of each instance of "fraud" in compliance with Rule 9(b) and setting forth the "date, place or time" as well as "who made a misrepresentation to whom and the general content of the misrepresentation" where appropriate. Daewoo's present failure to provide factual support for its claims of "fraud" render its allegations little more than the use of labels, conclusions, and formulaic recitations, which fail to provide fair notice of their claims.

6

### D. Dismissal of Counterclaims is Appropriate for Failure to Plead Relevant Market

This Court is not required to accept careless pleading. *See, Abraxis Bioscience, Inc., v. Navinta LLC*, 2008 WL 2967034, at *4 (D.N.J.):

> On a motion to dismiss, the Court "must accept as true all factual allegations in the ... complaint and all reasonable inferences that can be drawn from them." *Banks v. Wolk*, 918 F.2d 418, 419 (3d Cir.1990). Nevertheless, refashioning the appropriate standard, the Supreme Court of the United States found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)).

The danger inherent to allowing poorly plead anti-trust fraud claims to survive dismissal is more than the unnecessary increase to discovery costs and legal fees, but the real potential that vexatious opponents will shift the litigation risks for patent enforcement thereby chilling innovation. As Justice Harlan noted in *Walker Process*:

> [T]o hold, as we do not, that private antitrust suits might also reach monopolies practiced under patents that for one reason or another may turn out to be voidable under one or more of the numerous technicalities attending the issuance of a patent, might well chill the disclosure of inventions through the obtaining of a patent because of fear of the vexations or punitive consequences of treble-damage suits. Hence, this private antitrust remedy should not be deemed available to reach [Sherman Act] § 2 monopolies carried on under a nonfraudulently procured patent. *Id.* at 180, 86 S.Ct. at 352, 147 U.S.P.Q. at 408. *Also cited* in *Nobel-pharma* at 1069.

### E. Dismissal of Counterclaims is Appropriate Remedy

It is well-settled that a plaintiff seeking to invoke anti-trust or monopoly remedies must demonstrate that the alleged conduct has a dangerous probability of success in achieving monopoly power in the relevant market. Demonstration of a "dangerous probably of success" is

7

often focused upon market share, among other factors. *See, Barr Labs,, Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992.)("However, although the size of a defendant's market share is a significant determinant of whether a defendant has a dangerous probability of successfully monopolizing the relevant market, it is not exclusive"). In order to emphasize, and at times exaggerate, market share there is a tendency to argue for a narrow market. For this reason, the definition of the "relevant market" requires pleading with reasonable interchangeability of use or cross-elasticity of demand between the product and its substitutes, and the penalty for failure to do so may result in dismissal of claims. *See, Beuff Enters. Florida, Inc. v. Villa Pizza, LLC*, 2008 WL 2565008, at *3 (D.N.J. 2008) *citing Queen City Pizza, Inc. v. Dominos Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

> In most antitrust cases, "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Id.* It is error, however, to assume that this proposition is a *"per se* prohibition against dismissal of antitrust claims for failure to plead a relevant market under *Fed.R.Civ.P. 12(b)(6)." Id.* Indeed, when a plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.* *4.

In our case, Daewoo's allegation of sufficient market power requires definition of the relevant market as "direct drive front-load washing machines" (D.I. 80, paragraphs 113-114). Even taking the allegations as true, the claim admits LGE's products as "Direct Drive$^{TM}$ washing machines" (D.I. 80 at 108). With a proposed definition of the relevant market that begins and ends with LGE's trademarked drive system, therefore encompassing only LGE's own products, the counterclaimant ignores not only the rules of interchangeability and cross-elasticity, but would ask the Court to find there are no other means for washing clothes.

8

In recognition of this weakness, Daewoo proposes alternative definitions of the relevant market (D.I. 80 at 116 and 118), by introducing a geographic limitation of "the United States" or "the entire washing machine market" but under either of these alternatives the pleading lacks the necessary assertion LGE has sufficient market share, or combination of other factors, for a "dangerous probability of success in achieving monopoly power." *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992.)

## V. CONCLUSION

Plaintiff LG respectfully requests that the Court enforce the heightened pleading requirements of Rule 9(b) with regard to each allegation of fraud and dismiss the anti-trust and monopoly counterclaims for failure to properly define the relevant market.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Sunwoo Lee
Jon B. Crocker
Victoria D. Hao
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6801
Tel: (202) 955-3000

Karen A. Confoy
Erica S. Helms
STERNS & WEINROTH,
A Professional Corporation
50 West State Street, Suite 1400
Trenton, NJ 08608
Tel: (609) 392-2100

Dated: August 3, 2009
927156 / 33618

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Plaintiff
LG Electronics, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 3, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 3, 2009, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Rodger D. Smith II<br>Andrew C. Mayo<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>rsmith@mnat.com<br>amayo@mnat.com | Mark L. Whitaker<br>James M. Woods<br>Brian K. Andrea<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>whitakermark@howrey.com<br>woodsm@howrey.com<br>andreab@howrey.com |

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
D. Fon Muttamara-Walker
POTTER ANDERSON & CORROON LLP
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

902697 / 33618