# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO. 08-828


LG ELECTRONICS,                    :
                                   :
        Plaintiff,                 :
                                   :
        -vs-                       :
                                   :
ASKO APPLIANCES, INC., et    :   TRANSCRIPT OF PROCEEDINGS
Al.,                               :
                                   :
                                   :
        Defendants.                :

- - - - - - - - - - - - - - - - - - -


                          Trenton, New Jersey
                          October 15, 2009


     B E F O R E:

          THE HONORABLE JOEL A. PISANO
        UNITED STATES DISTRICT COURT JUDGE



     A P P E A R A N C E S:

     STERNS & WEINROTH
     BY:  ERICA HELMS, ESQ.,
     For the Plaintiff.



     Pursuant to Section 753 Title 28 United States
     Code, the following transcript is certified to be
     an accurate record as taken stenographically in the
     above-entitled proceedings.


     _____
          Joanne M. Caruso, CSR, CRR
           Official Court Reporter
              (908)334-2472

2

APPEARANCES CONTINUED:

HOLLAND & KNIGHT
BY:  JONATHAN B. CROCKER, ESQ.,
     VICTORIA D. HAO, ESQ.,
          And
POTTER ANDERSON & CORROON
BY:  DAVID E. MOORE, ESQ.,
For the Plaintiff.


CONNELL FOLEY
BY:  MARC D. HAEFNER, ESQ.,
     And
HOWREY LLP
BY:  MARK L. WHITAKER, ESQ.,
     J. MICHAEL WOODS, ESQ.,
      And
MORRIS, NICHOLS, ARSHT & TUNNELL
BY:  RODGER D. SMITH, II, ESQ.,
For the Defendants.

1          October 15, 2009

2          THE COURT:   Okay.   Our first time together,

3     is it not?

4          MR. CROCKER:  Yes, your Honor.

5          THE COURT:   Who do we have here?   Who's here for the

6    plaintiff?

7          MS. HELMS:  Erica Helms, New Jersey counsel, for

8    plaintiffs, LG Electronics.

9          With me is David Moore from the firm of Potter,

10   Anderson, Delaware counsel, for the plaintiff.   Also with me

11   are John Crocker and Victoria Hao, lead counsel for the

12   plaintiffs.

13          MR. CROCKER:  Good morning.

14          THE COURT:   You have Mr. Maskel.   Who is Mr. Maskel?

15   You're the client?

16          MR. MASKEL:  No, sir.

17          THE COURT:   Just observing?

18          MR. MASKEL:  Yes, sir.

19          THE COURT:   Welcome.

20          Now, for the defendants, are there any defendants

21   other than who's involved in these disputes?   Which defendant

22   do you represent?

23          MR. HAEFNER:  We represent all defendants, jointly.

24          THE COURT:  Everybody here represents all the

25   defendants?

 1          MR. HAEFNER:  Yes, your Honor.

 2          THE COURT:   Okay.  You want to make the

 3    introductions?

 4          MR. HAEFNER:  With me is Rodger Smith from Morris,

 5    Nichols.

 6          MR. SMITH:  Good morning.

 7          MR. HAEFNER:  Then Mark Whitaker.

 8          MR. WHITAKER:  Good morning.

 9          MR. HAEFNER:  Michael Woods.

10          MR. WOODS:  Good morning.

11          MR. HAEFNER:  Then Christopher Marraro.

12          MR. MARRARO:  Good morning.

13          THE COURT:   Thank you.

14          There are a number of things on today's docket.

15    First of all, I've reviewed the docket sheet and I've reviewed

16    the patent rules that have been imposed upon the case.  We're

17    using the New Jersey patent rules.

18          I have the joint discovery plan, I've got the

19    proposed schedule, which I ordered to be in effect way back in

20    February.

21          I've read the complaint.  I've read the answers and

22    counterclaims of all the defendants.  I have the patents.

23    Although I will confess to you I've looked at the patents, I

24    haven't committed them to memory yet, but I have them here.

25          There are a number of issues that we need to resolve

1   here today.  There is a -- I don't know what order you want to

2   take these in.  There's a motion by the plaintiff to dismiss

3   Daewoo's counterclaims.  Is this motion directed toward

4   everybody or just Daewoo?

5           MR. CROCKER:  Your Honor, it's directed against

6   Daewoo, but those counterclaims were only filed by Daewoo.

7           THE COURT:   Okay.

8           Who's going to speak to that motion?  Mr. Whitaker,

9   you?

10          MR. WHITAKER:  Yes.  I'll be speaking for all of the

11  motions, your Honor.

12          THE COURT:   All right.

13          So we have the motion to dismiss Daewoo's

14  counterclaims.  Then there is a letter application by the

15  plaintiff seeking a protective order about some -- about the

16  potential release of confidential documents, the two defense

17  experts.  Then there is another letter application by the

18  plaintiff to strike portions of the defendants' invalidity

19  contentions, which they claim are somehow deficient with the

20  local patent rules.  Then there is the, I don't know how else

21  to describe this, other than it's simply a garden-variety

22  discovery dispute as to whether the interrogatories are

23  appropriate or not, whether the plaintiff should have to

24  answer them, and I mean there's an entire procedural tassel

25  here as to whether it's the plaintiff's application to strike

1 the interrogatories, whether it's been brought properly with a

2 letter, whether they've waived the objection because they

3 didn't file a motion or whether it's the defendants' motion to

4 compel the production of the responses to the interrogatories,

5 but at the end of the day, it's an interrogatory dispute,

6 which, by the way, I think we'll get to last because it is

7 likely to lead to some frustration.

8        Let's deal with some of this.  Let's discuss what I

9 think are the easier ones first.  This is a letter of

10 September 15, from D. Fon Muttamara-Walker asking on behalf of

11 LG that the Court strike portions of the defendants'

12 invalidity contentions, and there is a letter which states the

13 position.

14        In response to that, there's the letter dated

15 September 30, from Mr. Smith, which says -- and it attaches a

16 number of exhibits that I've got.  It says that this matter

17 really doesn't need to be addressed because the defendants

18 have agreed on the issues in question and as a result, this

19 dispute isn't even ripe.

20        What do we have here?  What's the problem here and is

21 it something we need to address?

22        MR. CROCKER:  Your Honor, for the plaintiff, as I

23 understand their agreement, it's not that they're withdrawing

24 the 250 other references that they've provided, but they

25 simply have agreed that their exhibits, those charts one

1   through five, constitute their invalidity contentions.

2   They've submitted these additional 250 references and want

3   them to be on notice, I suppose, to the plaintiff.

4          THE COURT:   Let's talk about this.   What does the

5   schedule say about these contentions, about these invalidity

6   contentions?

7          MR. CROCKER:   Your Honor, they were due to be served

8   on August 28.

9          THE COURT:   Is that consistent with the local rules?

10         MR. CROCKER:   Yes, your Honor.

11         THE COURT:   Okay.

12         So what is your problem?

13         MR. CROCKER:   I received invalidity contentions,

14  exhibits one through five, and I'm happy with those.

15         I received a great deal of other material and I

16  believe that the defendants seek to rely upon that additional

17  material.   That's what I'd like to have stricken.

18         THE COURT:   So you're saying you've gotten too much

19  discovery?

20         MR. CROCKER:   I've gotten a list of 250 references

21  that are not contained within the invalidity contentions.

22         THE COURT:   Mr. Whitaker.

23         MR. WHITAKER:   Yes, your Honor.

24         Let me see if I can add some clarity.   What we have

25  told LG from the outset and continued to tell them, is that we

1  listed these additional references.  We were not asserting

2  them at this time; that we recognize that between now and I

3  believe it's plus 45 days, from the time that we have the

4  Markman hearing plus 45 days out, that we would seek leave

5  from the Court with respect to any of these additional 255

6  references.  We were simply giving them notice and giving them

7  notice of this additional discovery so that they knew about

8  these things, because we were aware of them.

9         They're out in the public domain, they're available.

10  They are things that we may assert later, but we know that we

11  will not be able to rely on them, at least currently, until we

12  come back to the court and seek leave to amend.

13         We posited these 250 additional references really so

14  that we can put them on notice, but recognizing as well that

15  through discovery, through document collection, through

16  discussions with inventors, through discussion and depositions

17  with other individuals involved in the art, that that may

18  inform us with respect to these additional references and at

19  that time it would be appropriate then to seek leave to then

20  rely on them for purposes of invalidity contentions.

21         THE COURT:  What's wrong with that?

22         MR. CROCKER:  Your Honor, with that understanding,

23  that their invalidity contentions are their exhibits one

24  through five, and that if they want to include anything else,

25  whether they've given us notice of it, they will apply for

1    leave of Court under Rule 3.7 and we'll consent.

2           THE COURT:   All right.

3           MR. WHITAKER:  Your Honor, that's what we have said.

4           THE COURT:   All right, so be it.

5           I don't know that there's an order required here.

6    What I might ask you to simply do is send a letter that

7    confirms this understanding.

8           MR. WHITAKER:  Yes, your Honor.

9           THE COURT:   That takes care of one problem.

10          Now, let's move to the dispute over the release of

11   materials to the proposed experts, James Braunschweig and Dr.

12   Robert Caligiuri.  This comes, again, in an exchange of

13   letters.

14          As I get it from the letter of August 27th, from Mr.

15   Moore, the concern of LG is that both these proposed experts

16   or potential experts have some association with competitors of

17   LG and as a result, their fear is that confidential

18   proprietary information would be indirectly disclosed to an

19   agent of a competitor.  That's in the letter of August 27th.

20          The letter of September 7th, in response from Mr.

21   Smith, again there's a procedural wrangling as to whether this

22   has been properly raised, but I'm going to deal with it all on

23   the merits, and the response is that neither of these

24   individuals works or is employed by any competitor of the

25   plaintiff, but more importantly, there's a confidentiality

1  agreement which precludes these witnesses from disclosing

2  anything they learn about this case to any competitors.

3       In addition to that, as to Dr. Caligiuri, it appears

4  that there was a prior litigation and LG did not object to his

5  receipt of any information in that prior litigation.  To the

6  extent that's relevant, I've read this.

7       If there's a confidentiality provision, Mr. Crocker,

8  why do we have a problem?

9       MR. CROCKER:  Your Honor, I'm not trying to demean

10  either of these experts, Dr. Caligiuri, Mr. Braunschweig.

11  However, once they're in possession of our client's

12  proprietary and commercially-valuable information, they could,

13  inadvertently, perhaps, relay that same information to our

14  competitor and specifically Whirlpool, that would be damaging

15  to LG.  So, therefore, to preclude the possibility or the risk

16  of a disclosure, inadvertent or otherwise, we would seek that

17  the defendants use different experts.

18       THE COURT:  Do you have this couched -- you have

19  this couched in an application for a protective order, when

20  what you really want is to disqualify experts because of the

21  potential inadvertent disclosure of materials to some unknown

22  competitor?  Come now.

23       MR. CROCKER:  Your Honor, I'm not trying to

24  disqualify the experts.

25       THE COURT:  That's what you just said.  You said you

1    want them to use a different expert.

2            MR. CROCKER:  I want them -- they can use those

3    experts as consultants, just not give them our

4    highly-confidential information.

5            THE COURT:   The ruling on this, to the extent this

6    is even before the Court, is that the objection -- first of

7    all, the application for protective order to "prevent

8    disclosure of materials" to these two individuals is denied.

9            I find that it's an inadequate basis for this kind of

10   an application to raise the potential inadvertent disclosure

11   of confidential materials to an unidentified potential

12   competitor of the plaintiff, particularly where there is a

13   confidentiality order which will bind these expert witnesses

14   and prevent them from making any kind of disclosure.

15           To the extent there is any potential danger of

16   prejudice to the plaintiff, I would suggest in the course of

17   taking discovery from these individuals, perhaps at a

18   deposition, that you simply remind them of their duties under

19   the confidentiality order.

20           To the extent there is an application raised in the

21   letter of August 27, it's denied.

22           We now move to -- while we're on discovery, let's

23   move to these interrogatories.  This is what we've got here:

24   This is an application raised in a letter of August 27, 2009,

25   from Mr. Moore, which takes the form of an application for the

1   Court to enforce the interrogatory limit agreed upon by the

2   parties in their amended joint discovery plan.

3          This letter of August 27th goes on and it attaches as

4   exhibits the interrogatories themselves, the various responses

5   and exchanges of e-mails.

6          I note as an aside, forgive my digression, but

7   looking around the room, I have been around longer than any of

8   you and I remember the dark day, the dark day in the

9   profession when people started attaching instructions to

10  interrogatories and objections to interrogatories instead of

11  just sending the interrogatory and the other side would answer

12  them or not answer them and off we went. It's impossible to

13  get through -- I can't force myself to read the set of

14  instructions and blanket objections before even getting to the

15  interrogatories, but that's only an aside.

16         Anyway, there's a response of September 11th, from

17  Mr. Smith.  There's a letter of September 18th from -- is this

18  Fon Muttamara-Walker male or female?

19         MR. MOORE:  Female, and she is no longer at Potter.

20         THE COURT:  Miss Walker, on September 18, weighs in

21  a request that this whole matter be referred to a special

22  master.  Then, of course, there is the response to that on

23  September 21st from Mr. Smith, saying that we don't need a

24  special master.  Then we have the motion filed by the

25  defendants to compel the production of the responses to the

1    interrogatories that are complained of in the plaintiff's

2    letter application, and that has there the notice of motion,

3    there's a declaration of Mr. Woods, there's plaintiff's

4    answering brief, there's a declaration of Miss Hao, there's a

5    reply brief and declaration of Mr. Woods, all on the

6    interrogatory dispute.

7            As I get it, I don't know, the parties have agreed to

8    35 interrogatories?

9            MR. CROCKER:  That's correct, your Honor.

10           MR. WHITAKER:  Yes.

11           THE COURT:  What we have here apparently -- who sent

12   these interrogatories?

13           MR. WHITAKER:  They were sent by the defendants.

14           THE COURT:  By all of the defendants?

15           MR. WHITAKER:  Yes.

16           THE COURT:  Something about 15 interrogatories?

17           MR. WHITAKER:  Yes, a total of 15.

18           THE COURT:  Three that were answered and 12

19   interrogatories that are in dispute.

20           MR. WHITAKER:  Yes.

21           THE COURT:  And the argument goes that the

22   interrogatories are not, in fact, 12 interrogatories, they're

23   something like 1600 interrogatories?

24           MR. WHITAKER:  Yes.

25           THE COURT:  Because they call for responses to

1   request for information about all the patents-in-suit, all the

2   claims of the patents-in-suit and when you multiply, do the

3   arithmetic, it comes out to 1600 and that that's somehow

4   that's wrong.

5          Now, what I did in considering this was to look at

6   the rule, which is always a good starting point.  Sometimes I

7   forget that, but anyway, I looked at the rule.  This is Patent

8   Rule 3, 3.1, which says, "Disclosure of asserted claims and

9   infringement contentions" and what I don't understand, Mr.

10  Crocker, is how the information being sought by these

11  interrogatories is really any different from the information

12  that you'd have to give in complying with local rule 3.1.

13         You brought the lawsuit, it's a patent infringement

14  claim, you identified the patents in the complaint and you say

15  that there are acts of infringement by these defendants and

16  the complaint is fairly specific.  The patents that are being

17  sued upon are attached to the complaint.

18         I'm at a loss to understand why you're making this

19  complaint.  Nobody says that this isn't difficult to do.  It's

20  a complicated case.  Any time you sue on this many patents and

21  there's this many defendants and the patents themselves aren't

22  all that simple either, they all have multiple claims, so what

23  is the problem here?  And why is the information requested any

24  different from what you have to give anyway in complying with

25  the rules?

1          MR. CROCKER:  Your Honor, I don't think the

2    defendants --

3          THE COURT:   Forgive me for interrupting you, I'm

4    sorry.

5          For example, I'm looking at the '382 patent and the

6    '382 patent itself has 34 claims.  So what's the problem?  In

7    complying with Rule 3.1, aren't you under an obligation to

8    give the information called for in these interrogatories?

9          MR. CROCKER:  Yes, your Honor, I think we are.

10         THE COURT:   Then what's the problem?  Why are we

11   going through this exercise?

12         MR. CROCKER:  Because I don't think defendants are

13   satisfied with our compliance with Rule 3.1.  We've given our

14   infringement contentions, they want more.  They want those

15   interrogatories answered in addition to the infringement

16   contentions, and they'd like the answers broken down by each

17   defendant, by each patent, by facts, people, documents and

18   elements within each of those sets.  That's the multiple.

19         If defendants would accept our infringement

20   contentions, which we already served as full satisfaction of

21   those interrogatories, then we don't have a dispute.

22         THE COURT:   When did you serve those?

23         MR. CROCKER:  In accordance with the schedule in the

24   order, your Honor, on July 17th.

25         THE COURT:   How about it, Mr. Whitaker?

1          MR. WHITAKER:  Your Honor, the only difference --

2    actually, two differences that we discern from what we've

3    requested and what the local rules require are two things:

4    First, the local rules do layout, as your Honor suggested, all

5    of the items in the interrogatory, except one, and that except

6    one is the local rules require a production of documents that

7    the plaintiffs would be relying on with respect to those

8    contentions.

9          Those documents, however, what we've requested in our

10   interrogatory is an identification of the documents that they

11   intend to rely on.  That's the first difference.

12         The second and only other difference, is that between

13   the local rule and the requirements --

14         THE COURT:  You want them to identify the documents

15   that they intend to rely on?

16         MR. WHITAKER:  Yes, your Honor.  In other words, for

17   each of the claims of infringement with respect to the

18   patents, we would like them to identify, if there are any, any

19   documents which they rely on, not just a data dump of

20   documents that they would just produce to us, but identify

21   expressly and specifically with respect to each infringement

22   contention.  That's the first difference between the local

23   rule and what we're requesting.

24         The second is that the local rule allows and affords

25   their party and our party to update or modify their

1    infringement contentions, again, out past the *Markman* ruling

2    date.  It doesn't require interrogatories under Rule 33,

3    there's a requirement that the parties seasonably update and

4    change those things.

5         So our request and our interrogatory is to insure

6    that the plaintiffs do that, not that they can do it under the

7    local rule or they have the -- they don't have an obligation

8    to do it under the local rule, under Rule 33 they do have the

9    affirmative obligation and that's the difference, your Honor.

10        THE COURT:  I don't think the local patent rules

11   supersede the Rules of Civil Procedure.

12        MR. WHITAKER:  Right, your Honor.

13        THE COURT:  The local patent rules were intended,

14   are intended, the reason we adopted them was to make it clear

15   to everybody in patent litigation what their obligations,

16   among other things, in discovery are.  One of the purposes of

17   adopting the local rules was to attempt to avoid this kind of

18   a discovery dispute.

19        MR. WHITAKER:  I understand, your Honor.

20        THE COURT:  So what you're telling me here is that

21   really what's in dispute is you want them to identify which

22   documents they're going to rely upon in support of which

23   infringement claims?

24        MR. WHITAKER:  Yes, your Honor.

25        THE COURT:  And I would expect the opposition to

1   that -- first of all, is there an opposition to that?

2           MR. CROCKER:  Not really, your Honor.  I think we can

3   resolve -- we can give them a list of documents.

4           THE COURT:   So ordered.  You can send in an order

5   that says that and include in it a recognition that

6   everybody's obligated under the Federal Rules of Civil

7   Procedure to continually supplement their disclosures to the

8   extent.

9           MR. WHITAKER:  That ruling will ascend to all of the

10  other interrogatories, the other 11 that are in dispute?

11          THE COURT:   I thought that was it?

12          MR. CROCKER:  So did I, your Honor.

13          THE COURT:   I thought that was it.  Fine, send in an

14  appropriate order.  That takes care of that pile.

15          Now, is there anything here left, other than this

16  motion to dismiss the counterclaims?  That's all that I have

17  left.

18          Before we get to that, why don't you spend five

19  minutes and tell me what this case is about.  This is

20  substantive and it would be helpful to know a little bit about

21  your case.

22          MR. CROCKER:  Your Honor, just to briefly summarize

23  the case, this is about washing machines.  Specifically --

24          THE COURT:   I remember you wanted to bring washing

25  machines in here, we had orders, we had to tell the marshals

1  the appliance truck was pulling up in front of the courthouse.

2         MR. CROCKER:  Your Honor, that's right.  I still do.

3  I've got them.

4         THE COURT:   I bet you do.

5         MR. CROCKER:  We've cut them away so you can actually

6  see visually into the washing machine.  You can see them

7  side-by-side, theirs and ours.  You can see the comparison of

8  the two machines and they're virtually identical, at least

9  we'll offer testimony to that.

10        In addition to the fact we're talking about front

11  loading washing machines, they've got a motor on the back of

12  that washing machine tub that turns the tub or the drum.

13        THE COURT:   It can't be just front loading washing

14  machines?

15        MR. CROCKER:  That's correct, your Honor.  It's the

16  method by which that motor attaches to the back of the drum

17  and turns that drum horizontally in order to wash the clothes.

18        THE COURT:   Is that the direct drive feature?

19        MR. CROCKER:  Yes, your Honor, that's exactly right,

20  direct drive.  Instead of using a motor located somewhere else

21  with a belt and pulley system, we put the motor directly on

22  the back of the drum.

23        THE COURT:   Will you permit me another digression?

24  You mentioned a belt and pulley system.  This doesn't even

25  have to be on the record.

1          (Discussion held off the record.)

2          THE COURT:   Forgive me.

3          MR. CROCKER:  The virtues of a belt system aside, our

4     system uses a motor directly attached to the drum and rotates

5     that drum horizontally at very high speed.  What that does is

6     allow you to clean the clothes with less damage to the clothes

7     and less consumption of water and other beneficial affects for

8     energy.  That's what the system is.  That's what direct drive

9     is.

10         Our complaint is that we believe Daewoo has copied

11    that system, re-engineered it, essentially copied it and sold

12    it under another brand which is ASKO, here in the United

13    States.

14         THE COURT:   All right.

15         The '382 patent says structure of driving unit in a

16    drum-type washing machine.  So does the '716, so does the

17    '363.  The '424 is a little bit different but looks like about

18    the same business.  The '843, drum-type washing machine, okay.

19         MR. CROCKER:  That's it, your Honor.

20         MR. WHITAKER:  Your Honor, I don't have a dispute

21    with Mr. Crocker's recitation as to the facts of the

22    technology at issue, but as you might well imagine, we do have

23    a dispute as to whether we infringe.

24         We also believe on the basis of a number of different

25    grounds that all five patents are invalid or unenforceable due

1  to inequitable conduct or under grounds of 102 or 103,

2  anticipation or obviousness reasons.

3          THE COURT:   So we have all of our familiar issues.

4  We've got obviousness, we have anticipation, we have

5  inequitable conduct.

6          MR. WHITAKER:  We have indefiniteness, yes, your

7  Honor, under 112.  Exactly.

8          There was one other issue that I did want to raise

9  with your Honor, and that was going back to the

10 interrogatories.  There was one other issue that we had raised

11 in our motion and that was whether or not the plaintiffs

12 waived their objections, their specific objections since they

13 didn't make any with respect to any of the 12 interrogatories.

14 We wanted --

15         THE COURT:   That objection is overruled.  I'm

16 dealing with all of this on the merits.  That theme is

17 pervasive in all of these exchanges of letters, that they

18 shouldn't have done it by a letter, they should have filed a

19 motion.  I'm not dealing with it.

20         MR. WHITAKER:  I just wanted to make sure that was on

21 the record.

22         THE COURT:   Fine.

23         In addition to what you said about your defenses,

24 there are counterclaims and there are counterclaims based on

25 antitrust violations.

1          MR. WHITAKER:  Yes, your Honor.  There's currently a

2     motion to dismiss those as well.

3          THE COURT:   Right.  I know.  I have that here.  I've

4     read all of this.

5          This is what I've read:   I've read the motion, I've

6     read the plaintiff's brief, Daewoo's answering brief that has

7     the *Exergen Corporation* opinion attached to it and then

8     there's a reply memorandum.  Then there's another issue here

9     about an order in connection with Daewoo's unopposed motion

10    for leave to file a sur-reply and there is a sur-reply.

11          I guess I need to sign this order, because otherwise

12    we have to report this.

13          Now, having read all those briefs, I've also read

14    some cases, particularly Federal Circuit's opinions in

15    *Nobel-pharma*, which is 141 F.3d 1059, and *Dippin' Dots*, 476

16    F.3d 1337, each of which speak in terms of the elements of an

17    antitrust counterclaim in patent cases, and how the antitrust

18    counterclaims have different or, I should say, heightened

19    requirements of pleading and proofs over and above the defense

20    of invalidity based upon inequitable conduct.

21          Of course, the seminal case on the subject goes back

22    to the *Walker Process* opinion from the Supreme Court decades

23    ago.  How about it, Mr. Crocker?

24          MR. CROCKER:  Your Honor, in addition to the cases

25    you just listed, what caused the necessity of their sur-reply

1   and what we contained in our brief was another Federal Circuit

2   case, *Exergen v. Wal-Mart* that was decided on August 4th, the

3   day after our opening brief, which is why we didn't include

4   it, of course.

5          That slip opinion is 2006, 1491 and I think we've

6   provided a copy of it.

7          THE COURT:   Yes, I have that here.   That's in your

8   reply memo.

9          MR. CROCKER:   Taken together with the cases already

10  cited by the Court, we find that the defendants' pleading of

11  these antitrust counterclaims to be conclusory.   They allege

12  fraud or fraudulent conduct, but do not describe with any

13  particularity as to who committed the fraud and what knowledge

14  they had that led them to make that decision to withhold

15  information from the PTO resulting in the inequitable conduct

16  that they allege.   All of their antitrust claims are based

17  upon that original set of facts, which is fundamentally

18  deficient.   Not more complicated than that.

19          THE COURT:   Okay.

20          MR. WHITAKER:   Your Honor, of course, we disagree.

21  We think that we pled in roughly 150 paragraphs a very viable

22  antitrust claim under *Walker Process* and the cases that you

23  allege and stated.

24          We pleaded date, time, place.   We pleaded the

25  application date of the PTO, we pleaded who made the

1  representations to who, and gave names of the attorneys, in a

2  footnote, to LG and its counsel to the PTO, we pleaded general

3  content, the content of fraud and specificity and we pleaded

4  that the direct drive washers as a market pleaded the LG

5  market share, we talked about LG's market competitors, we

6  pleaded that Daewoo and Samsung are also in the market, so the

7  market is not limited to LG.

8         We think that we pleaded with great specificity and,

9  in fact, the information that Mr. Crocker indicated just a

10  moment ago, that what knowledge they had, I would assert and

11  say to Mr. Crocker and to the Court, that that knowledge, that

12  specific knowledge of what they knew at that moment, if that

13  was truly the test, I don't believe that there would ever be a

14  claim.  That is the test.  We know where the information is,

15  we know that there was fraud and we know, based on our

16  pleadings, where we need to go to find that fraud further in

17  discovery.

18         I think we've laid out a prima facie case and we've

19  done so within the pleading requirements of the cases.

20         THE COURT:  All right.

21         Any other argument on this?

22         MR. CROCKER:  If I can respond, your Honor?

23         THE COURT:  Sure.

24         MR. CROCKER:  They've pleaded the date and place and

25  reference.  The date is the date of the application.  That

1   would be the same for every patent case or would change based

2   upon whatever patent that they're attacking.

3        The place, at the PTO office, that would be the same.

4   If that was the pleading requirement, then there really isn't

5   a pleading requirement because it would be a formalula, which

6   is exactly what their 150 paragraphs of their counterclaims

7   are.  Formula A simply recites, substituting in each of the

8   patents in rotation and it doesn't provide us with the key

9   information we need.

10        In terms of the person, we want the name of an

11   individual who is licensed by the PTO, has patent bar

12   registration number and that person who had a duty to disclose

13   knew that they had this information, whatever it was, not just

14   an omitted prior art reference, but something within that

15   reference that actually bears on one of the particular claims

16   and that that person, that individual knew it, he knew that

17   reference existed, he knew what was in that reference that was

18   the material information and that he further -- he or she

19   further made the decision that they weren't going to tell the

20   PTO about it.  That is the inequitable conduct that they have

21   to prove.  That's what they should be alleging and they

22   haven't.

23        MR. WHITAKER:  Your Honor, in summary, I have to

24   disagree with counsel.  LG is armed with our pleading with

25   every piece of information that they could possibly need right

1    now to be put on notice and not just notice, but to have armed

2    with the information that Mr. Crocker just recited.  He has

3    the names of the individuals, he knows the prior art that we

4    believe was omitted and it wasn't just omitted in one case,

5    your Honor.

6         Simple omission with respect to one additional

7    application, that would have been one thing, but these prior

8    art references were omitted three times for three different

9    patent applications here in the United States, cited prior art

10   in a foreign application that never made it into these

11   applications and I believe that we've cited names of the

12   individuals who knew about these references, should have known

13   about the references and under the MFPE, there was an

14   affirmative -- Manual For Patent Examination, under the MFPE,

15   they had an affirmative duty to bring those references to the

16   knowledge of the patent examiner who examined those patents

17   and they didn't do that.  We think that we've fully pled that,

18   your Honor.

19        THE COURT:   This *Exergen* opinion speaks about

20   inequitable conduct.  I don't see anything in here about an

21   antitrust counterclaim.

22        MR. WHITAKER:  Your Honor, the *Exergen* case is not

23   about antitrust at all.  It is only and solely about

24   inequitable conduct, and as the Court may know, it is a case

25   that has brought a lot of, how shall I say, commentary within

1   the patent bar.

2          THE COURT:   This case?

3          MR. WHITAKER:   That case, the ABA, American

4   intellectual and patent practitioners around the country, lots

5   of comments both for and con, and it stands for a different

6   proposition than what we are standing here before you today

7   and that is we have pled a viable antitrust counterclaim,

8   not --

9          MR. CROCKER:   I agree with opposing counsel and

10  that's exactly correct.   *Exergen* is about inequitable conduct.

11          However, their antitrust counterclaims all depends

12  from the inequitable conduct allegations, so if their

13  inequitable conduct allegation fails, so does their antitrust.

14          THE COURT:   You're right.   The fact of the matter is

15  that the threshold of proofs in the antitrust counterclaim is

16  heightened and we know that from the cases that I've cited.

17  It sounds complicated.   It feels like it should be more

18  complicated than it is, but the fact of the matter is if you

19  think logically about it, their inequitable conduct allegation

20  as a defense, and we know that the defendant bears the burden

21  of proof and convincing evidence and all of that, but the

22  antitrust counterclaim is an affirmative claim which has

23  additional elements that need to be asserted in addition.

24          In other words, there would have to be a viable

25  antitrust case asserted, which requires, according to these

1    cases, a heightened threshold of proofs and, of course, the

2    requisite antitrust claims identifying the appropriate market,

3    et cetera.

4          Anyway, I've looked at this and I'm keeping in mind

5    that this is not a motion for summary judgment.  This is a

6    motion attacking the pleading.

7          My conclusion, having read it, is that it is

8    adequately -- it does adequately assert not only the

9    inequitable conduct defense, but also the antitrust claim.  I

10   find that there is adequate specificity.  It is not conclusory

11   in the extreme and it simply summarizes my conclusion, which

12   it is necessary to put in some sort of a written opinion or

13   memorandum order, I have concluded that the pleading is

14   adequate, it does state the cause of action and the motion to

15   dismiss it is denied.

16         Going through this, you can see particularly, there

17   are specific prior art references given.  That's page 23.

18   Specific Japanese patent applications given, there are dates.

19   I'll articulate this in a writing, but the motion is going to

20   be denied.

21         I think that takes care of everything before us.

22   Before you leave, what can we expect here?  Where are we

23   going?  What do you expect the case to be in its final form?

24   Are we going to have to try it?  Is there anything else that I

25   can do to help?

1        MR. WHITAKER:  Yes, your Honor.  Just a couple of

2   housekeeping matters.

3        I think, and what I've done in previous practice is,

4   perhaps, project out some months in advance as we go through

5   discovery.  It might be helpful if the parties get together

6   with the judge once or twice during the discovery period to

7   have a status conference, see where we're at, talk about any

8   issues.

9        THE COURT:  I invite you to do that.  My experience,

10  you may know this, I was a magistrate judge for several years

11  and my experience in managing complex cases was that there was

12  a great benefit in bringing everybody in periodically.  It

13  forces the attorneys and the parties to open the file, to read

14  them and speak to one another, and it forces the Court to open

15  the file and read it and keeps everybody up to speed.  You're

16  encouraged and invited to do that.  If you want to send us

17  some proposed dates, I'll be happy to do that.

18       MR. WHITAKER:  We'll work with the plaintiff on that

19  and figure out something.

20       THE COURT:  How complicated is claims construction

21  going to be?

22       MR. WHITAKER:  At least right now, your Honor, there

23  are a number of claims that both sets or both sides are

24  working through.  It is our hope that we'll be able to pare

25  that number of claims down so that there's not as many for the

1   Court to construe.  We will work through that and our hope is

2   that we'll come to some accommodation with some lower number.

3          MR. CROCKER:  Your Honor, I think we're at about 200

4   on the list right now, but I don't anticipate there being a

5   great deal.  The number of terms for the Court to construe,

6   should be a relatively small amount.  I don't think it will be

7   particularly difficult, it's a mechanical patent.

8          THE COURT:   Good.

9          MR. WHITAKER:  Your Honor, just one final

10  housekeeping matter on one of the orders that we're going to

11  be preparing and that is with respect to the interrogatories.

12  The timing for responses to those interrogatories?

13         THE COURT:   Work it out.

14         MR. WHITAKER:  Okay.

15         THE COURT:   If you agree to it, it's all right with

16  me.

17         MR. WHITAKER:  Thank you, your Honor.

18         THE COURT:   The schedule -- is this schedule still

19  viable, by the way?  This has claims construction, opening

20  claims construction in December of '09, which is two months

21  from now.

22         MR. WHITAKER:  Yes, your Honor.  From the defendants'

23  standpoint, we think that we can still meet that.  However, if

24  we get to a point where we're in disagreement as to the number

25  of claims to be construed, we'll come back to the Court

1    immediately.

2          THE COURT:   When do you think you would like to come

3    in for a status conference?  Do you want to come before the

4    end of the year or wait until January?

5          MR. WHITAKER:  Your Honor, if I can make a

6    suggestion?  I'd like to come in before the end of the year,

7    preferably perhaps in early December, after we get down the

8    road a little bit further.  That would be the first time.

9          MR. CROCKER:  I can inform the Court, we're due to

10   give the opening *Markman* decisions on December 11.

11         THE COURT:   You want to come in before that or just

12   after it or simultaneously?

13         MR. WHITAKER:  Either.

14         THE COURT:   I'm going to be trying a criminal case

15   and I have some obligations which might make this problematic.

16   I think if you want to come in on the 15th of December, how's

17   that date?

18         December 15, how is that, folks?

19         MR. CROCKER:  Yes, your Honor.

20         MR. WHITAKER:  If I may have a moment, your Honor?

21         MR. CROCKER:  While he's checking his calendar --

22         THE COURT:   Is that all right?

23         MR. WHITAKER:  That's fine, your Honor.

24         THE COURT:   Call it 1:30?

25         MR. WHITAKER:  1:30 would be great.

—32—

1          MR. CROCKER:  In terms of both parties have been

2     confused as to how best to petition the Court, by letter brief

3     or formal motion.  If you could give us your guidance, your

4     preference, we'd appreciate it.

5          THE COURT:  Well, discovery disputes have always, in

6     my view, been better raised in letters because we don't get

7     involved in the concomitant delay that motion practice would

8     require and my experience is that discovery disputes are best

9     resolved quickly.  So I don't mind getting letter applications

10    on discovery issues, but on substantive issues, I would

11    imagine a motion is necessary.

12          MR. WHITAKER:  No disagreement.

13          THE COURT:  I'm going to deal with it on the merits

14    of it anyway.  I try -- we don't want to raise form over

15    substance here.

16          Anything else?

17          MR. WHITAKER:  Nothing from defendants.

18          THE COURT:   Thank you.

19          MR. CROCKER:  Nothing.

20          (Matter concluded.)

21

22

23

24

25

**'**

**'09** [1] - 30:20
**'363** [1] - 20:17
**'382** [3] - 15:5, 15:6, 20:15
**'424** [1] - 20:17
**'716** [1] - 20:16
**'843** [1] - 20:18

**0**

**08-828** [1] - 1:2

**1**

**102** [1] - 21:1
**103** [1] - 21:1
**1059** [1] - 22:15
**11** [2] - 18:10, 31:10
**112** [1] - 21:7
**11th** [1] - 12:16
**12** [3] - 13:18, 13:22, 21:13
**1337** [1] - 22:16
**141** [1] - 22:15
**1491** [1] - 23:5
**15** [6] - 1:11, 3:1, 6:10, 13:16, 13:17, 31:18
**150** [2] - 23:21, 25:6
**15th** [1] - 31:16
**1600** [2] - 13:23, 14:3
**17th** [1] - 15:24
**18** [1] - 12:20
**18th** [1] - 12:17
**1:30** [2] - 31:24, 31:25

**2**

**200** [1] - 30:3
**2006** [1] - 23:5
**2009** [3] - 1:11, 3:1, 11:24
**21st** [1] - 12:23
**23** [1] - 28:17
**250** [4] - 6:24, 7:2, 7:20, 8:13
**255** [1] - 8:5
**27** [2] - 11:21, 11:24
**27th** [2] - 9:14, 9:19, 12:3
**28** [2] - 1:21, 7:8

**3**

**3** [1] - 14:8
**3.1** [4] - 14:8, 14:12,

15:7, 15:13
**3.7** [1] - 9:1
**30** [1] - 6:15
**33** [2] - 17:2, 17:8
**34** [1] - 15:6
**35** [1] - 13:8

**4**

**45** [2] - 8:3, 8:4
**476** [1] - 22:15
**4th** [1] - 23:2

**7**

**753** [1] - 1:21
**7th** [1] - 9:20

**9**

**908)334-2472** [1] - 1:25

**A**

**ABA** [1] - 27:3
**able** [2] - 8:11, 29:24
**above-entitled** [1] - 1:22
**accept** [1] - 15:19
**accommodation** [1] - 30:2
**accordance** [1] - 15:23
**according** [1] - 27:25
**accurate** [1] - 1:22
**action** [1] - 28:14
**acts** [1] - 14:15
**add** [1] - 7:24
**addition** [6] - 10:3, 15:15, 19:10, 21:23, 22:24, 27:23
**additional** [9] - 7:2, 7:16, 8:1, 8:5, 8:7, 8:13, 8:18, 26:6, 27:23
**address** [1] - 6:21
**addressed** [1] - 6:17
**adequate** [2] - 28:10, 28:14
**adequately** [2] - 28:8
**adopted** [1] - 17:14
**adopting** [1] - 17:17
**advance** [1] - 29:4
**affects** [1] - 20:7
**affords** [1] - 16:24
**agent** [1] - 9:19
**ago** [2] - 22:23, 24:10
**agree** [1] - 27:9,

30:15
**agreed** [4] - 6:18, 6:25, 12:1, 13:7
**agreement** [2] - 6:23, 10:1
**al** [1] - 1:7
**allegation** [1] - 27:13, 27:19
**allegations** [1] - 27:12
**allege** [3] - 23:11, 23:16, 23:23
**alleging** [1] - 25:21
**allow** [1] - 20:6
**allows** [1] - 16:24
**amend** [1] - 8:12
**amended** [1] - 12:2
**American** [1] - 27:3
**amount** [1] - 30:6
**ANDERSON** [1] - 2:4
**Anderson** [1] - 3:10
**answer** [3] - 5:24, 12:11, 12:12
**answered** [2] - 13:18, 15:15
**answering** [2] - 13:4, 22:6
**answers** [2] - 4:21, 15:16
**anticipate** [1] - 30:4
**anticipation** [2] - 21:2, 21:4
**antitrust** [16] - 21:25, 22:17, 23:11, 23:16, 23:22, 26:21, 26:23, 27:7, 27:11, 27:13, 27:15, 27:22, 27:25, 28:2, 28:9
**anyway** [5] - 12:16, 14:7, 14:24, 28:4, 32:14
**APPEARANCES** [1] - 2:1
**appliance** [1] - 19:1
**APPLIANCES** [1] - 1:6
**application** [14] - 5:14, 5:17, 5:25, 10:19, 11:7, 11:10, 11:20, 11:24, 11:25, 13:2, 23:25, 24:25, 26:7, 26:10
**applications** [4] - 26:9, 26:11, 28:18, 32:9
**apply** [1] - 8:25
**appreciate** [1] - 32:4
**appropriate** [4] - 5:23, 8:19, 18:14, 28:2
**argument** [2] - 13:21, 24:21
**arithmetic** [1] - 14:3

**armed** [2] - 25:24, 26:1
**ARSHT** [1] - 2:10
**art** [6] - 8:17, 25:14, 26:3, 26:8, 26:9, 28:17
**articulate** [1] - 28:19
**ascend** [1] - 18:9
**aside** [3] - 12:6, 12:15, 20:3
**ASKO** [1] - 1:6, 20:12
**assert** [3] - 8:10, 24:10, 28:8
**asserted** [3] - 14:8, 27:23, 27:25
**asserting** [1] - 8:1
**association** [1] - 9:16
**attached** [3] - 14:17, 20:4, 22:7
**attaches** [3] - 6:15, 12:3, 19:16
**attaching** [1] - 12:9
**attacking** [2] - 25:2, 28:6
**attempt** [1] - 17:17
**attorneys** [2] - 24:1, 29:13
**August** [7] - 7:8, 9:14, 9:19, 11:21, 11:24, 12:3, 23:2
**available** [1] - 8:9
**avoid** [1] - 17:17
**aware** [1] - 8:8

**B**

**bar** [2] - 25:11, 27:1
**based** [6] - 21:24, 22:20, 23:16, 24:15, 25:1
**basis** [2] - 11:9, 20:24
**bears** [2] - 25:15, 27:20
**behalf** [1] - 6:10
**belt** [3] - 19:21, 19:24, 20:3
**beneficial** [1] - 20:7
**benefit** [1] - 29:12
**best** [2] - 32:2, 32:8
**bet** [1] - 19:4
**better** [1] - 32:6
**between** [3] - 8:2, 8:12, 16:22
**bind** [1] - 11:13
**bit** [3] - 18:20, 20:17, 31:8
**blanket** [1] - 12:14
**brand** [1] - 20:12
**Braunschweig** [2] -

9:11, 10:10
**brief** [7] - 13:4, 13:5, 22:6, 23:1, 23:3, 32:2
**briefly** [1] - 18:22
**briefs** [1] - 22:13
**bring** [2] - 18:24, 26:15
**bringing** [1] - 29:12
**broken** [1] - 15:16
**brought** [3] - 6:1, 14:13, 26:25
**burden** [1] - 27:20
**business** [1] - 20:18
**BY** [6] - 1:18, 2:2, 2:4, 2:7, 2:8, 2:10

**C**

**calendar** [1] - 31:21
**Caligiuri** [3] - 9:12, 10:3, 10:10
**care** [3] - 9:9, 18:14, 28:21
**Caruso** [1] - 1:24
**case** [18] - 4:16, 10:2, 14:20, 18:19, 18:21, 18:23, 22:21, 23:2, 24:18, 25:1, 26:4, 26:22, 26:24, 27:2, 27:3, 27:25, 28:23, 31:14
**cases** [9] - 22:14, 22:17, 22:24, 23:9, 23:22, 24:19, 27:16, 28:1, 29:11
**caused** [1] - 22:25
**certified** [1] - 1:21
**cetera** [1] - 28:3
**change** [2] - 17:4, 25:1
**charts** [1] - 6:25
**checking** [1] - 31:21
**Christopher** [1] - 4:11
**Circuit** [1] - 23:1
**Circuit's** [1] - 22:14
**cited** [4] - 23:10, 26:9, 26:11, 27:16
**Civil** [2] - 17:11, 18:6
**CIVIL** [1] - 1:2
**claim** [6] - 5:19, 14:14, 23:22, 24:14, 27:22, 28:9
**claims** [15] - 14:2, 14:8, 14:22, 15:6, 16:17, 17:23, 23:16, 25:15, 28:2, 29:20, 29:23, 29:25, 30:19, 30:20, 30:25
**clarity** [1] - 7:24
**clean** [1] - 20:6
**clear** [1] - 17:14

**client** [1] - 3:15
**client's** [1] - 10:11
**clothes** [3] - 19:17, 20:6
**Code** [1] - 1:21
**collection** [1] - 8:15
**commentary** [1] - 26:25
**comments** [1] - 27:5
**commercially** [1] - 10:12
**commercially-valuable** [1] - 10:12
**committed** [2] - 4:24, 23:13
**comparison** [1] - 19:7
**compel** [2] - 6:4, 12:25
**competitor** [5] - 9:19, 9:24, 10:14, 10:22, 11:12
**competitors** [3] - 9:16, 10:2, 24:5
**complained** [1] - 13:1
**complaint** [6] - 4:21, 14:14, 14:16, 14:17, 14:19, 20:10
**complex** [1] - 29:11
**compliance** [1] - 15:13
**complicated** [5] - 14:20, 23:18, 27:17, 27:18, 29:20
**complying** [3] - 14:12, 14:24, 15:7
**con** [1] - 27:5
**concern** [1] - 9:15
**concluded** [2] - 28:13, 32:20
**conclusion** [2] - 28:7, 28:11
**conclusory** [2] - 23:11, 28:10
**concomitant** [1] - 32:7
**conduct** [13] - 21:1, 21:5, 22:20, 23:12, 23:15, 25:20, 26:20, 26:24, 27:10, 27:12, 27:13, 27:19, 28:9
**conference** [2] - 29:7, 31:3
**confess** [1] - 4:23
**confidential** [4] - 5:16, 9:17, 11:4, 11:11
**confidentiality** [4] - 9:25, 10:7, 11:13, 11:19
**confirms** [1] - 9:7
**confused** [1] - 32:2

**connection** [1] - 22:9
**CONNELL** [1] - 2:6
**consent** [1] - 9:1
**considering** [1] - 14:5
**consistent** [1] - 7:9
**constitute** [1] - 7:1
**construction** [3] - 29:20, 30:19, 30:20
**construe** [2] - 30:1, 30:5
**construed** [1] - 30:25
**consultants** [1] - 11:3
**consumption** [1] - 20:7
**contained** [2] - 7:21, 23:1
**content** [2] - 24:3
**contention** [1] - 16:22
**contentions** [15] - 5:19, 6:12, 7:1, 7:5, 7:6, 7:13, 7:21, 8:20, 8:23, 14:9, 15:14, 15:16, 15:20, 16:8, 17:1
**continually** [1] - 18:7
**continued** [1] - 7:25
**CONTINUED** [1] - 2:1
**convincing** [1] - 27:21
**copied** [2] - 20:10, 20:11
**copy** [1] - 23:6
**Corporation** [1] - 22:7
**correct** [3] - 13:9, 19:15, 27:10
**CORROON** [1] - 2:4
**couched** [2] - 10:18, 10:19
**counsel** [6] - 3:7, 3:10, 3:11, 24:2, 25:24, 27:9
**counterclaim** [5] - 22:17, 26:21, 27:7, 27:15, 27:22
**counterclaims** [11] - 4:22, 5:3, 5:6, 5:14, 18:16, 21:24, 22:18, 23:11, 25:6, 27:11
**country** [1] - 27:4
**couple** [1] - 29:1
**course** [6] - 11:16, 12:22, 22:21, 23:4, 23:20, 28:1
**court** [1] - 8:12
**COURT** [75] - 1:1, 1:14, 3:2, 3:5, 3:14, 3:17, 3:19, 3:24, 4:2,

4:13, 5:7, 5:12, 7:4, 7:9, 7:11, 7:18, 7:22, 8:21, 9:2, 9:4, 9:9, 10:18, 10:25, 11:5, 12:20, 13:11, 13:14, 13:16, 13:18, 13:21, 13:25, 15:3, 15:10, 15:22, 15:25, 16:14, 17:10, 17:13, 17:20, 17:25, 18:4, 18:11, 18:13, 18:24, 19:4, 19:13, 19:18, 19:23, 20:2, 20:14, 21:3, 21:15, 21:22, 22:3, 23:7, 23:19, 24:20, 24:23, 26:19, 27:2, 27:14, 29:9, 29:20, 30:8, 30:13, 30:15, 30:18, 31:2, 31:11, 31:14, 31:22, 31:24, 32:5, 32:13, 32:18
**Court** [16] - 1:25, 6:11, 8:5, 9:1, 11:6, 12:1, 12:22, 23:10, 24:11, 26:24, 29:14, 30:1, 30:5, 30:25, 31:9, 32:2
**courthouse** [1] - 19:1
**criminal** [1] - 31:14
**CROCKER** [38] - 2:2, 3:4, 3:13, 5:5, 6:22, 7:7, 7:10, 7:13, 7:20, 8:22, 10:9, 10:23, 11:2, 13:9, 15:1, 15:9, 15:12, 15:23, 18:2, 18:12, 18:22, 19:2, 19:5, 19:15, 19:19, 20:3, 20:19, 22:24, 23:9, 24:22, 24:24, 27:9, 30:3, 31:9, 31:19, 31:21, 32:1, 32:19
**Crocker** [7] - 3:11, 10:7, 14:10, 12:23, 24:9, 24:11, 26:2
**Crocker's** [1] - 20:21
**CRR** [1] - 1:24
**CSR** [1] - 1:24
**cut** [1] - 19:5

**D**

**Daewoo** [5] - 5:4, 5:6, 20:10, 24:6
**Daewoo's** [4] - 5:3, 5:13, 22:6, 22:9
**damage** [1] - 20:6
**damaging** [1] - 10:14
**danger** [1] - 11:15
**dark** [2] - 12:8
**data** [1] - 16:19

**date** [7] - 17:2, 23:24, 23:25, 24:24, 24:25, 31:17
**dated** [1] - 6:14
**dates** [2] - 28:18, 29:17
**DAVID** [1] - 2:4
**David** [1] - 3:9
**days** [2] - 8:3, 8:4
**deal** [5] - 6:8, 7:15, 9:22, 30:5, 32:13
**dealing** [2] - 21:16, 21:19
**decades** [1] - 22:22
**December** [5] - 30:20, 31:7, 31:10, 31:16, 31:18
**decided** [1] - 23:2
**decision** [2] - 23:14, 25:19
**decisions** [1] - 31:10
**declaration** [3] - 13:3, 13:4, 13:5
**defendant** [3] - 3:21, 15:17, 27:20
**Defendants** [2] - 1:8, 2:11
**defendants** [17] - 3:20, 3:23, 3:25, 4:22, 6:17, 7:16, 10:17, 12:25, 13:13, 13:14, 14:15, 14:21, 15:2, 15:12, 15:19, 32:17
**defendants'** [5] - 5:18, 6:3, 6:11, 23:10, 30:22
**defense** [4] - 5:16, 22:19, 27:20, 28:9
**defenses** [1] - 21:23
**deficient** [2] - 5:19, 23:18
**Delaware** [1] - 3:10
**delay** [1] - 32:7
**demean** [1] - 10:9
**denied** [4] - 11:8, 11:21, 28:15, 28:20
**deposition** [1] - 11:18
**depositions** [1] - 8:16
**describe** [2] - 5:21, 23:12
**difference** [5] - 16:1, 16:11, 16:12, 16:22, 17:9
**differences** [1] - 20:6
**different** [9] - 10:17, 11:1, 14:11, 14:24, 20:17, 20:24, 22:18, 26:8, 27:5
**difficult** [2] - 14:19, 30:7
**digression** [2] - 12:6,

19:23
**Dippin'** [1] - 22:15
**direct** [4] - 19:18, 19:20, 20:8, 24:4
**directed** [2] - 5:3, 5:5
**directly** [2] - 19:21, 20:4
**disagree** [2] - 23:20, 25:24
**disagreement** [2] - 30:24, 32:12
**discern** [1] - 16:2
**disclose** [1] - 25:12
**disclosed** [1] - 9:18
**disclosing** [1] - 10:1
**Disclosure** [1] - 14:8
**disclosure** [5] - 10:16, 10:21, 11:8, 11:10, 11:14
**disclosures** [1] - 18:7
**discovery** [16] - 4:18, 5:22, 7:19, 8:7, 8:15, 11:17, 11:22, 12:2, 17:16, 17:18, 24:17, 29:5, 29:6, 32:5, 32:8, 32:10
**discuss** [1] - 6:8
**discussion** [1] - 8:16
**Discussion** [1] - 20:1
**discussions** [1] - 8:16
**dismiss** [5] - 5:2, 5:13, 18:16, 22:2, 28:15
**dispute** [12] - 5:22, 6:5, 6:19, 9:10, 13:6, 13:19, 15:21, 17:18, 17:21, 18:10, 20:20, 20:23
**disputes** [3] - 3:21, 32:5, 32:8
**disqualify** [2] - 10:20, 10:24
**DISTRICT** [3] - 1:1, 1:1, 1:14
**docket** [2] - 4:14, 4:15
**document** [1] - 8:15
**documents** [10] - 5:16, 15:17, 16:6, 16:9, 16:10, 16:14, 16:19, 16:20, 17:22, 18:3
**domain** [1] - 8:9
**done** [3] - 21:18, 24:19, 29:3
**Dots** [1] - 22:15
**down** [3] - 15:16, 29:25, 31:7
**Dr** [3] - 9:11, 10:3, 10:10
**drive** [4] - 19:18,

19:20, 20:8, 24:4
**driving** [1] - 20:15
**drum** [8] - 19:12,
19:16, 19:17, 19:22,
20:4, 20:5, 20:16,
20:18
**drum-type** [2] -
20:16, 20:18
**due** [3] - 7:7, 20:25,
31:9
**dump** [1] - 16:19
**during** [1] - 29:6
**duties** [1] - 11:18
**duty** [2] - 25:12,
26:15

# E

**e-mails** [1] - 12:5
**early** [1] - 31:7
**easier** [1] - 6:9
**effect** [1] - 4:19
**either** [3] - 10:10,
14:22, 31:13
**ELECTRONICS** [1] -
1:3
**Electronics** [1] - 3:8
**elements** [3] - 15:18,
22:16, 27:23
**employed** [1] - 9:24
**encouraged** [1] -
29:16
**end** [3] - 6:5, 31:4,
31:6
**energy** [1] - 20:8
**enforce** [1] - 12:1
**engineered** [1] -
20:11
**entire** [1] - 5:24
**entitled** [1] - 1:22
**Erica** [1] - 3:7
**ERICA** [1] - 1:18
**ESQ** [8] - 1:18, 2:2,
2:3, 2:4, 2:7, 2:8, 2:9,
2:10
**essentially** [1] -
20:11
**et** [2] - 1:6, 28:3
**evidence** [1] - 27:21
**exactly** [4] - 19:19,
21:7, 25:6, 27:10
**Examination** [1] -
26:14
**examined** [1] - 26:16
**examiner** [1] - 26:16
**example** [1] - 15:5
**except** [2] - 16:5
**exchange** [1] - 9:12
**exchanges** [2] -
12:5, 21:17
**exercise** [1] - 15:11
**Exergen** [5] - 22:7,

23:2, 26:19, 26:22,
27:10
**exhibits** [5] - 6:16,
6:25, 7:14, 8:23, 12:4
**existed** [1] - 25:17
**expect** [3] - 17:25,
28:22, 28:23
**experience** [3] -
29:9, 29:11, 32:8
**expert** [2] - 11:1,
11:13
**experts** [9] - 5:17,
9:11, 9:15, 9:16,
10:10, 10:17, 10:20,
10:24, 11:3
**expressly** [1] - 16:21
**extent** [5] - 10:6,
11:5, 11:15, 11:20,
18:8
**extreme** [1] - 28:11

# F

**F.3d** [2] - 22:15,
22:16
**facie** [1] - 24:18
**fact** [5] - 13:22,
19:10, 24:9, 27:14,
27:18
**facts** [3] - 15:17,
20:21, 23:17
**fails** [1] - 27:13
**fairly** [1] - 14:16
**familiar** [1] - 21:3
**fear** [1] - 9:17
**feature** [1] - 19:18
**February** [1] - 4:20
**Federal** [3] - 18:6,
22:14, 23:1
**female** [2] - 12:18,
12:19
**figure** [1] - 29:19
**file** [4] - 6:3, 22:10,
29:13, 29:15
**filed** [3] - 5:6, 12:24,
21:18
**final** [2] - 28:23, 30:9
**fine** [3] - 18:13,
21:22, 31:23
**firm** [1] - 3:9
**first** [9] - 3:2, 4:15,
6:9, 11:6, 16:4, 16:11,
16:22, 18:1, 31:8
**five** [5] - 7:1, 7:14,
8:24, 18:18, 20:25
**FOLEY** [1] - 2:6
**folks** [1] - 31:18
**following** [1] - 1:21
**Fon** [2] - 6:10, 12:18
**footnote** [1] - 24:2
**FOR** [1] - 1:1
**force** [1] - 12:13

**forces** [2] - 29:13,
29:14
**foreign** [1] - 26:10
**forget** [1] - 14:7
**forgive** [3] - 12:6,
15:3, 20:2
**form** [3] - 11:25,
28:23, 32:14
**formal** [1] - 32:3
**formalula** [1] - 25:5
**formula** [1] - 25:7
**fraud** [5] - 23:12,
23:13, 24:3, 24:15,
24:16
**fraudulent** [1] -
23:12
**front** [3] - 19:1,
19:10, 19:13
**frustration** [1] - 6:7
**full** [1] - 15:20
**fully** [1] - 26:17
**fundamentally** [1] -
23:17

# G

**garden** [1] - 5:21
**garden-variety** [1] -
5:21
**general** [1] - 24:2
**given** [4] - 8:25,
15:13, 28:17, 28:18
**great** [5] - 7:15, 24:8,
29:12, 30:5, 31:25
**grounds** [2] - 20:25,
21:1
**guess** [1] - 22:11
**guidance** [1] - 32:3

# H

**HAEFNER** [7] - 2:7,
3:23, 4:1, 4:4, 4:7,
4:9, 4:11
**HAO** [1] - 2:3
**Hao** [2] - 3:11, 13:4
**happy** [2] - 7:14,
29:17
**hearing** [1] - 8:4
**heightened** [3] -
22:18, 27:16, 28:1
**held** [1] - 20:1
**Helms** [1] - 3:7
**HELMS** [2] - 1:18,
3:7
**help** [1] - 28:25
**helpful** [2] - 18:20,
29:5
**high** [1] - 20:5
**highly** [1] - 11:4
**highly-confidential**

[1] - 11:4
**HOLLAND** [1] - 2:2
**Honor** [52] - 3:4, 4:1,
5:5, 5:11, 6:22, 7:7,
7:10, 7:23, 8:22, 9:3,
9:8, 10:9, 10:23, 13:9,
15:1, 15:9, 15:24,
16:1, 16:4, 16:16,
17:9, 17:12, 17:19,
17:24, 18:2, 18:12,
18:22, 19:2, 19:15,
19:19, 20:19, 20:20,
21:7, 21:9, 22:1,
22:24, 23:20, 24:22,
25:23, 26:5, 26:18,
26:22, 29:1, 29:22,
30:3, 30:9, 30:17,
30:22, 31:5, 31:19,
31:20, 31:23
**HONORABLE** [1] -
1:14
**hope** [2] - 29:24,
30:1
**horizontally** [2] -
19:17, 20:5
**housekeeping** [2] -
29:2, 30:10
**HOWREY** [1] - 2:8

# I

**identical** [1] - 19:8
**identification** [1] -
16:10
**identified** [1] - 14:14
**identify** [4] - 16:14,
16:18, 16:20, 17:21
**identifying** [1] - 28:2
**II** [1] - 2:10
**imagine** [2] - 20:22,
32:11
**immediately** [1] -
31:1
**importantly** [1] -
9:25
**imposed** [1] - 4:16
**impossible** [1] -
12:12
**IN** [1] - 1:1
**inadequate** [1] - 11:9
**inadvertent** [3] -
10:16, 10:21, 11:10
**inadvertently** [1] -
10:13
**INC** [1] - 1:6
**include** [3] - 8:24,
18:5, 23:3
**indefiniteness** [1] -
21:6
**indicated** [1] - 24:9
**indirectly** [1] - 9:18
**individual** [2] -

25:11, 25:16
**individuals** [6] -
8:17, 9:24, 11:8,
11:17, 26:3, 26:12
**inequitable** [12] -
21:1, 21:5, 22:20,
23:15, 25:20, 26:20,
26:24, 27:10, 27:12,
27:13, 27:19, 28:9
**inform** [1] - 8:18,
31:9
**information** [18] -
9:18, 10:5, 10:12,
10:13, 11:4, 14:1,
14:10, 14:11, 14:23,
15:8, 23:15, 24:9,
24:14, 25:9, 25:13,
25:18, 25:25, 26:2
**infringe** [1] - 20:23
**infringement** [10] -
14:9, 14:13, 14:15,
15:14, 15:15, 15:19,
16:17, 16:21, 17:1,
17:23
**instead** [2] - 12:10,
19:20
**instructions** [2] -
12:9, 12:14
**insure** [1] - 17:5
**intellectual** [1] - 27:4
**intend** [2] - 16:11,
16:15
**intended** [2] - 17:13,
17:14
**interrogatories** [26] -
5:22, 6:1, 6:4, 11:23,
12:4, 12:10, 12:15,
13:1, 13:8, 13:12,
13:16, 13:19, 13:22,
13:23, 14:11, 15:8,
15:15, 15:21, 17:2,
18:10, 21:10, 21:13,
30:11, 30:12
**interrogatory** [7] -
6:5, 12:1, 12:11, 13:6,
16:5, 16:10, 17:5
**interrupting** [1] -
15:3
**introductions** [1] -
4:3
**invalid** [1] - 20:25
**invalidity** [9] - 5:18,
6:12, 7:1, 7:5, 7:13,
7:21, 8:20, 8:23,
22:20
**inventors** [1] - 8:16
**invite** [1] - 29:9
**invited** [1] - 29:16
**involved** [3] - 3:21,
8:17, 32:7
**issue** [4] - 20:22,
21:8, 21:10, 22:8
**issues** [6] - 4:25,

6:18, 21:3, 29:8, 32:10
**items** [1] - 16:5
**itself** [1] - 15:6

## J

**James** [1] - 9:11
**January** [1] - 31:4
**Japanese** [1] - 28:18
**JERSEY** [1] - 1:1
**Jersey** [3] - 1:11, 3:7, 4:17
**Joanne** [1] - 1:24
**JOEL** [1] - 1:14
**John** [1] - 3:11
**joint** [2] - 4:18, 12:2
**jointly** [1] - 3:23
**JONATHAN** [1] - 2:2
**JUDGE** [1] - 1:14
**judge** [2] - 29:6, 29:10
**judgment** [1] - 28:5
**July** [1] - 15:24

## K

**keeping** [1] - 28:4
**keeps** [1] - 29:15
**key** [1] - 25:8
**kind** [3] - 11:9, 11:14, 17:17
**KNIGHT** [1] - 2:2
**knowledge** [5] - 23:13, 24:10, 24:11, 24:12, 26:16
**known** [1] - 26:12
**knows** [1] - 26:3

## L

**laid** [1] - 24:18
**last** [1] - 6:6
**lawsuit** [1] - 14:13
**layout** [1] - 16:4
**lead** [2] - 3:11, 6:7
**learn** [1] - 10:2
**least** [3] - 8:11, 19:8, 29:22
**leave** [6] - 8:4, 8:12, 8:19, 9:1, 22:10, 28:22
**led** [1] - 23:14
**left** [2] - 18:15, 18:17
**less** [2] - 20:6, 20:7
**letter** [18] - 5:14, 5:17, 6:2, 6:9, 6:12, 6:14, 9:6, 9:14, 9:19, 9:20, 11:21, 11:24, 12:3, 12:17, 13:2,

21:18, 32:2, 32:9
**letters** [3] - 9:13, 21:17, 32:6
**LG** [12] - 1:3, 3:8, 6:11, 7:25, 9:15, 9:17, 10:4, 10:15, 24:2, 24:4, 24:7, 25:24
**LG's** [1] - 24:5
**licensed** [1] - 25:11
**likely** [1] - 6:7
**limit** [1] - 12:1
**limited** [1] - 24:7
**list** [3] - 7:20, 18:3, 30:4
**listed** [2] - 8:1, 22:25
**litigation** [2] - 10:4, 10:5, 17:15
**LLP** [1] - 2:8
**loading** [2] - 19:11, 19:13
**local** [14] - 5:20, 7:9, 14:12, 16:3, 16:4, 16:6, 16:13, 16:22, 16:24, 17:7, 17:8, 17:10, 17:13, 17:17
**located** [1] - 19:20
**logically** [1] - 27:19
**look** [1] - 14:5
**looked** [3] - 4:23, 14:7, 28:4
**looking** [2] - 12:7, 15:5
**looks** [1] - 20:17
**loss** [1] - 14:18
**lower** [1] - 30:2

## M

**machine** [4] - 19:6, 19:12, 20:16, 20:18
**machines** [5] - 18:23, 18:25, 19:8, 19:11, 19:14
**magistrate** [1] - 29:10
**mails** [1] - 12:5
**male** [1] - 12:18
**managing** [1] - 29:11
**Manual** [1] - 26:14
**MARC** [1] - 2:7
**Mark** [1] - 4:7
**MARK** [1] - 2:8
**market** [6] - 24:4, 24:5, 24:6, 24:7, 28:2
**Markman** [3] - 8:4, 17:1, 31:10
**Marraro** [1] - 4:11
**MARRARO** [1] - 4:12
**marshals** [1] - 18:25
**Mart** [1] - 23:2
**maskel** [1] - 3:14
**Maskel** [1] - 3:14

**MASKEL** [2] - 3:16, 3:18
**master** [2] - 12:22, 12:24
**material** [3] - 7:15, 7:17, 25:18
**materials** [4] - 9:11, 10:21, 11:8, 11:11
**matter** [5] - 6:16, 12:21, 27:14, 27:18, 30:10
**Matter** [1] - 32:20
**matters** [1] - 29:2
**mean** [1] - 5:24
**mechanical** [1] - 30:7
**meet** [1] - 30:23
**memo** [1] - 23:8
**memorandum** [2] - 22:8, 28:13
**memory** [1] - 4:24
**mentioned** [1] - 19:24
**merits** [3] - 9:23, 21:16, 32:13
**method** [1] - 19:16
**MFPE** [2] - 26:13, 26:14
**Michael** [1] - 4:9
**MICHAEL** [1] - 2:9
**might** [4] - 9:6, 20:22, 29:5, 31:15
**mind** [2] - 28:4, 32:9
**minutes** [1] - 18:19
**miss** [1] - 12:20
**Miss** [1] - 13:4
**modify** [1] - 16:25
**moment** [3] - 24:10, 24:12, 31:20
**months** [1] - 29:4, 30:20
**MOORE** [2] - 2:4, 12:19
**Moore** [3] - 3:9, 9:15, 11:25
**morning** [5] - 3:13, 4:6, 4:8, 4:10, 4:12
**Morris** [1] - 4:4
**MORRIS** [1] - 2:10
**motion** [21] - 5:2, 5:3, 5:8, 5:13, 6:3, 12:24, 13:2, 18:16, 21:11, 21:19, 22:2, 22:5, 22:9, 28:5, 28:6, 28:14, 28:19, 32:3, 32:7, 32:11
**motions** [1] - 5:11
**motor** [5] - 19:11, 19:16, 19:20, 19:21, 20:4
**move** [3] - 9:10, 11:22, 11:23

**MR** [88] - 3:4, 3:13, 3:16, 3:18, 3:23, 4:1, 4:4, 4:6, 4:7, 4:8, 4:9, 4:10, 4:11, 4:12, 5:5, 5:10, 6:22, 7:7, 7:10, 7:13, 7:20, 7:23, 8:22, 9:3, 9:8, 10:9, 10:23, 11:2, 12:19, 13:9, 13:10, 13:13, 13:15, 13:17, 13:20, 13:24, 15:1, 15:9, 15:12, 15:23, 16:1, 16:16, 17:12, 17:19, 17:24, 18:2, 18:9, 18:12, 18:22, 19:2, 19:5, 19:15, 19:19, 20:3, 20:19, 20:20, 21:6, 21:20, 22:1, 22:24, 23:9, 23:20, 24:22, 24:24, 25:23, 26:22, 27:3, 27:9, 29:1, 29:18, 29:22, 30:3, 30:9, 30:14, 30:17, 30:22, 31:5, 31:9, 31:13, 31:19, 31:20, 31:21, 31:23, 31:25, 32:1, 32:12, 32:17, 32:19
**MS** [1] - 3:7
**multiple** [2] - 14:22, 15:18
**multiply** [1] - 14:2
**Muttamara** [2] - 6:10, 12:18
**Muttamara-Walker** [2] - 6:10, 12:18

## N

**name** [1] - 25:10
**names** [3] - 24:1, 26:3, 26:11
**necessary** [2] - 28:12, 32:11
**necessity** [1] - 22:25
**need** [9] - 4:25, 6:17, 6:21, 12:23, 22:11, 24:16, 25:9, 25:25, 27:23
**never** [1] - 26:10
**NEW** [1] - 1:1
**New** [3] - 1:11, 3:7, 4:17
**NICHOLS** [1] - 2:10
**Nichols** [1] - 4:5
**NO** [1] - 1:2
**Nobel** [1] - 22:15
**Nobel-pharma** [1] - 22:15
**nobody** [1] - 14:19
**note** [1] - 12:6
**nothing** [2] - 32:17,

32:19
**notice** [8] - 7:3, 8:6, 8:7, 8:14, 8:25, 13:2, 26:1
**number** [10] - 4:14, 4:25, 6:16, 20:24, 25:12, 29:23, 29:25, 30:2, 30:5, 30:24

## O

**object** [1] - 10:4
**objection** [3] - 6:2, 11:6, 21:15
**objections** [4] - 12:10, 12:14, 21:12
**obligated** [1] - 18:6
**obligation** [3] - 15:7, 17:7, 17:9
**obligations** [2] - 17:15, 31:15
**observing** [1] - 3:17
**obviousness** [2] - 21:2, 21:4
**October** [2] - 1:11, 3:1
**OF** [2] - 1:1, 1:6
**offer** [1] - 19:9
**office** [1] - 25:3
**Official** [1] - 1:25
**omission** [1] - 26:6
**omitted** [4] - 25:14, 26:4, 26:8
**once** [2] - 10:11, 29:6
**one** [16] - 6:25, 7:14, 8:23, 9:9, 16:5, 16:6, 17:16, 21:8, 21:10, 25:15, 26:4, 26:6, 26:7, 29:14, 30:9, 30:10
**ones** [1] - 6:9
**open** [2] - 29:13, 29:14
**opening** [3] - 23:3, 30:19, 31:10
**opinion** [5] - 22:7, 22:22, 23:5, 26:19, 28:12
**opinions** [1] - 22:14
**opposing** [1] - 27:9
**opposition** [2] - 17:25, 18:1
**order** [14] - 5:1, 5:15, 9:5, 10:19, 11:7, 11:13, 11:19, 15:24, 18:4, 18:14, 19:17, 22:9, 22:11, 28:13
**ordered** [2] - 4:19, 18:4
**orders** [1] - 18:25, 30:10

**original** [1] - 23:17
**otherwise** [2] - 10:16, 22:11
**outset** [1] - 7:25
**overruled** [1] - 21:15

**P**

**page** [1] - 28:17
**paragraphs** [2] - 23:21, 25:6
**pare** [1] - 29:24
**particular** [1] - 25:15
**particularity** [1] - 23:13
**particularly** [4] - 11:12, 22:14, 28:16, 30:7
**parties** [6] - 12:2, 13:7, 17:3, 29:5, 29:13, 32:1
**party** [2] - 16:25
**past** [1] - 17:1
**Patent** [2] - 14:7, 26:14
**patent** [21] - 4:16, 4:17, 5:20, 14:13, 15:5, 15:6, 15:17, 17:10, 17:13, 17:15, 20:15, 22:17, 25:1, 25:2, 25:11, 26:9, 26:16, 27:1, 27:4, 28:18, 30:7
**patents** [12] - 4:22, 4:23, 14:1, 14:2, 14:14, 14:16, 14:20, 14:21, 16:18, 20:25, 25:8, 26:16
**patents-in-suit** [2] - 14:1, 14:2
**people** [2] - 12:9, 15:17
**perhaps** [4] - 10:13, 11:17, 29:4, 31:7
**period** [1] - 29:6
**periodically** [1] - 29:12
**permit** [1] - 19:23
**person** [2] - 25:10, 25:12, 25:16
**pervasive** [1] - 21:17
**petition** [1] - 32:2
**pharma** [1] - 22:15
**piece** [1] - 25:25
**pile** [1] - 18:14
**PISANO** [1] - 1:14
**place** [2] - 23:24, 24:24, 25:3
**plaintiff** [12] - 3:6, 3:10, 5:2, 5:15, 5:18, 5:23, 6:22, 7:3, 9:25, 11:12, 11:16, 29:18

**Plaintiff** [3] - 1:4, 1:18, 2:5
**plaintiff's** [4] - 5:25, 13:1, 13:3, 22:6
**plaintiffs** [5] - 3:8, 3:12, 16:7, 17:6, 21:11
**plan** [2] - 4:18, 12:2
**pleaded** [9] - 23:24, 23:25, 24:2, 24:3, 24:4, 24:6, 24:8, 24:24
**pleading** [8] - 22:19, 23:10, 24:19, 25:4, 25:5, 25:24, 28:6, 28:13
**pleadings** [1] - 24:16
**pled** [3] - 23:21, 26:17, 27:7
**plus** [2] - 8:3, 8:4
**point** [2] - 14:6, 30:24
**portions** [2] - 5:18, 6:11
**posited** [1] - 8:13
**position** [1] - 6:13
**possession** [1] - 10:11
**possibility** [1] - 10:15
**possibly** [1] - 25:25
**potential** [6] - 5:16, 9:16, 10:21, 11:10, 11:11, 11:15
**POTTER** [1] - 2:4
**Potter** [2] - 3:9, 12:19
**practice** [2] - 29:3, 32:7
**practitioners** [1] - 27:4
**preclude** [1] - 10:15
**precludes** [1] - 10:1
**preferably** [1] - 31:7
**preference** [1] - 32:4
**prejudice** [1] - 11:16
**preparing** [1] - 30:11
**prevent** [2] - 11:7, 11:14
**previous** [1] - 29:3
**prima** [1] - 24:18
**problem** [7] - 6:20, 7:12, 9:9, 10:8, 14:23, 15:6, 15:10
**problematic** [1] - 31:15
**procedural** [2] - 5:24, 9:21
**Procedure** [2] - 17:11, 18:7
**PROCEEDINGS** [1] - 1:6

**proceedings** [1] - 1:22
**Process** [2] - 22:22, 23:22
**produce** [1] - 16:20
**production** [3] - 6:4, 12:25, 16:6
**profession** [1] - 12:9
**project** [1] - 29:4
**proof** [1] - 27:21
**proofs** [3] - 22:19, 27:15, 28:1
**properly** [2] - 6:1, 9:22
**proposed** [4] - 4:19, 9:11, 9:15, 29:17
**proposition** [1] - 27:6
**proprietary** [2] - 9:18, 10:12
**protective** [3] - 5:15, 10:19, 11:7
**prove** [1] - 25:21
**provide** [1] - 25:8
**provided** [2] - 6:24, 23:6
**provision** [1] - 10:7
**PTO** [6] - 23:15, 23:25, 24:2, 25:3, 25:11, 25:20
**public** [1] - 8:9
**pulley** [2] - 19:21, 19:24
**pulling** [1] - 19:1
**purposes** [2] - 8:20, 17:16
**Pursuant** [1] - 1:21
**put** [4] - 8:14, 19:21, 26:1, 28:12

**Q**

**quickly** [1] - 32:9

**R**

**raise** [3] - 11:10, 21:8, 32:14
**raised** [5] - 9:22, 11:20, 11:24, 21:10, 32:6
**re** [1] - 20:11
**re-engineered** [1] - 20:11
**read** [13] - 4:21, 10:6, 12:13, 22:4, 22:5, 22:6, 22:13, 28:7, 29:13, 29:19
**really** [7] - 6:17, 8:13, 10:20, 14:11, 17:21, 18:2, 25:4

**reason** [1] - 17:14
**reasons** [1] - 21:2
**receipt** [1] - 10:5
**received** [2] - 7:13, 7:15
**recitation** [1] - 20:21
**recited** [1] - 26:2
**recites** [1] - 25:7
**recognition** [1] - 18:5
**recognize** [1] - 8:2
**recognizing** [1] - 8:14
**record** [4] - 1:22, 19:25, 20:1, 21:21
**reference** [5] - 24:25, 25:14, 25:15, 25:17
**references** [12] - 6:24, 7:2, 7:20, 8:1, 8:6, 8:13, 8:18, 26:8, 26:12, 26:13, 26:15, 28:17
**referred** [1] - 12:21
**registration** [1] - 25:12
**relatively** [1] - 30:6
**relay** [1] - 10:13
**release** [2] - 5:16, 9:10
**relevant** [1] - 10:6
**rely** [7] - 7:16, 8:11, 8:20, 16:11, 16:15, 16:19, 17:22
**relying** [1] - 16:7
**remember** [2] - 12:8, 18:24
**remind** [1] - 11:18
**reply** [6] - 13:5, 22:8, 22:10, 22:25, 23:8
**report** [1] - 22:12
**Reporter** [1] - 1:25
**represent** [2] - 3:22, 3:23
**representations** [1] - 24:1
**represents** [1] - 3:24
**request** [3] - 12:21, 14:1, 17:5
**requested** [3] - 14:23, 16:3, 16:9
**requesting** [1] - 16:23
**require** [4] - 16:3, 16:6, 17:2, 32:8
**required** [1] - 9:5
**requirement** [3] - 17:3, 25:4, 25:5
**requirements** [3] - 16:13, 22:19, 24:19
**requires** [1] - 27:25
**requisite** [1] - 28:2
**resolve** [2] - 4:25,

18:3
**resolved** [1] - 32:9
**respect** [8] - 8:5, 8:18, 16:7, 16:17, 16:21, 21:13, 26:6, 30:11
**respond** [1] - 24:22
**response** [5] - 6:14, 9:20, 9:23, 12:16, 12:22
**responses** [5] - 6:4, 12:4, 12:25, 13:25, 30:12
**result** [2] - 6:18, 9:17
**resulting** [1] - 23:15
**reviewed** [2] - 4:15
**ripe** [1] - 6:19
**risk** [1] - 10:15
**road** [1] - 31:8
**Robert** [1] - 9:12
**Rodger** [1] - 4:4
**RODGER** [1] - 2:10
**room** [1] - 12:7
**rotates** [1] - 20:4
**rotation** [1] - 25:8
**roughly** [1] - 23:21
**rule** [8] - 14:6, 14:7, 14:12, 16:13, 16:23, 16:24, 17:7, 17:8
**Rule** [6] - 9:1, 14:8, 15:7, 15:13, 17:2, 17:8
**rules** [11] - 4:16, 4:17, 5:20, 7:9, 14:25, 16:3, 16:4, 16:6, 16:10, 17:13, 17:17
**Rules** [2] - 17:11, 18:6
**ruling** [3] - 11:5, 17:1, 18:9

**S**

**Samsung** [1] - 24:6
**satisfaction** [1] - 15:20
**satisfied** [1] - 15:13
**schedule** [5] - 4:19, 7:5, 15:23, 30:18
**seasonably** [1] - 17:3
**second** [2] - 16:12, 16:24
**Section** [1] - 1:21
**see** [7] - 7:24, 19:6, 19:7, 26:20, 28:16, 29:7
**seek** [5] - 7:16, 8:4, 8:12, 8:19, 10:16
**seeking** [1] - 5:15
**seminal** [1] - 22:21
**send** [4] - 9:6, 18:4,

18:13, 29:16
**sending** [1] - 12:11
**sent** [2] - 13:11, 13:13
**September** [7] - 6:10, 6:15, 9:20, 12:16, 12:17, 12:20, 12:23
**serve** [1] - 15:22
**served** [2] - 7:7, 15:20
**set** [2] - 12:13, 23:17
**sets** [2] - 15:18, 29:23
**several** [1] - 29:10
**shall** [1] - 26:25
**share** [1] - 24:5
**sheet** [1] - 4:15
**side** [3] - 12:11, 19:7
**side-by-side** [1] - 19:7
**sides** [1] - 29:23
**sign** [1] - 22:11
**simple** [2] - 14:22, 26:6
**simply** [7] - 5:21, 6:25, 8:6, 9:6, 11:18, 25:7, 28:11
**simultaneously** [1] - 31:12
**slip** [1] - 23:5
**small** [1] - 30:6
**SMITH** [2] - 2:10, 4:6
**Smith** [5] - 4:4, 6:15, 9:21, 12:17, 12:23
**sold** [1] - 20:11
**solely** [1] - 26:25
**sometimes** [1] - 14:6
**somewhere** [1] - 19:20
**sorry** [1] - 15:4
**sort** [1] - 28:12
**sought** [1] - 14:10
**sounds** [1] - 27:17
**speaking** [1] - 5:10
**speaks** [1] - 26:19
**special** [2] - 12:21, 12:24
**specific** [5] - 14:16, 21:12, 24:12, 28:17, 28:18
**specifically** [3] - 10:14, 16:21, 18:23
**specificity** [3] - 24:3, 24:8, 28:10
**speed** [2] - 20:5, 29:15
**spend** [1] - 18:18
**standing** [1] - 27:6
**standpoint** [1] - 30:23
**stands** [1] - 27:5

**started** [1] - 12:9
**starting** [1] - 14:6
**state** [1] - 28:14
**STATES** [2] - 1:1, 1:14
**states** [1] - 6:12
**States** [3] - 1:21, 20:13, 26:9
**status** [2] - 29:7, 31:3
**stenographically** [1] - 1:22
**STERNS** [1] - 1:17
**still** [3] - 19:2, 30:18, 30:23
**stricken** [1] - 7:17
**strike** [3] - 5:18, 5:25, 6:11
**structure** [1] - 20:15
**subject** [1] - 22:21
**submitted** [1] - 7:2
**substance** [1] - 32:15
**substantive** [2] - 18:20, 32:10
**substituting** [1] - 25:7
**sue** [1] - 14:20
**sued** [1] - 14:17
**suggest** [1] - 11:16
**suggested** [1] - 16:4
**suggestion** [1] - 31:6
**suit** [2] - 14:1, 14:2
**summarize** [1] - 18:22
**summarizes** [1] - 28:11
**summary** [2] - 25:23, 28:5
**supersede** [1] - 17:11
**supplement** [1] - 18:7
**support** [1] - 17:22
**suppose** [1] - 7:3
**Supreme** [1] - 22:22
**sur** [3] - 22:10, 22:25
**sur-reply** [2] - 22:10, 22:25
**system** [6] - 19:21, 19:24, 20:3, 20:4, 20:8, 20:11

**T**

**tassel** [1] - 5:24
**technology** [1] - 20:22
**terms** [4] - 22:16, 25:10, 30:5, 32:1
**test** [2] - 24:13, 24:14

**testimony** [1] - 19:9
**THE** [76] - 1:1, 1:1, 1:14, 3:2, 3:5, 3:14, 3:17, 3:19, 3:24, 4:2, 4:13, 5:7, 5:12, 7:4, 7:9, 7:11, 7:18, 7:22, 8:21, 9:2, 9:4, 9:9, 10:18, 10:25, 11:5, 12:20, 13:11, 13:14, 13:16, 13:18, 13:21, 13:25, 15:3, 15:10, 15:22, 15:25, 16:14, 17:10, 17:13, 17:20, 17:25, 18:4, 18:11, 18:13, 18:24, 19:4, 19:13, 19:18, 19:23, 20:2, 20:14, 21:3, 21:15, 21:22, 22:3, 23:7, 23:19, 24:20, 24:23, 26:19, 27:2, 27:14, 29:9, 29:20, 30:8, 30:13, 30:15, 30:18, 31:2, 31:11, 31:14, 31:22, 31:24, 32:5, 32:13, 32:18
**theirs** [1] - 19:7
**theme** [1] - 21:16
**themselves** [2] - 12:4, 14:21
**therefore** [1] - 10:15
**they've** [6] - 6:2, 6:24, 7:2, 8:25, 19:11, 24:24
**three** [3] - 13:18, 26:8
**threshold** [2] - 27:15, 28:1
**timing** [1] - 30:12
**Title** [1] - 1:21
**today** [2] - 5:1, 27:6
**today's** [1] - 4:14
**together** [3] - 3:2, 23:9, 29:5
**total** [1] - 13:17
**toward** [1] - 5:3
**TRANSCRIPT** [1] - 1:6
**transcript** [1] - 1:21
**Trenton** [1] - 1:11
**truck** [1] - 19:1
**truly** [1] - 24:13
**try** [2] - 28:24, 32:14
**trying** [3] - 10:9, 10:23, 31:14
**tub** [2] - 19:12
**TUNNELL** [1] - 2:10
**turns** [2] - 19:12, 19:17
**twice** [1] - 29:6
**two** [6] - 5:16, 11:8, 16:2, 16:3, 19:8, 30:20
**type** [2] - 20:16,

20:18

**U**

**under** [14] - 9:1, 11:18, 15:7, 17:2, 17:6, 17:8, 18:6, 20:12, 21:1, 21:7, 23:22, 26:13, 26:14
**unenforceable** [1] - 20:25
**unidentified** [1] - 11:11
**unit** [1] - 20:15
**UNITED** [2] - 1:1, 1:14
**United** [3] - 1:21, 20:12, 26:9
**unknown** [1] - 10:21
**unopposed** [1] - 22:9
**up** [2] - 19:1, 29:15
**update** [2] - 16:25, 17:3
**uses** [1] - 20:4

**V**

**valuable** [1] - 10:12
**variety** [1] - 5:21
**various** [1] - 12:4
**viable** [4] - 23:21, 27:7, 27:24, 30:19
**VICTORIA** [1] - 2:3
**Victoria** [1] - 3:11
**view** [1] - 32:6
**violations** [1] - 21:25
**virtually** [1] - 19:8
**virtues** [1] - 20:3
**visually** [1] - 19:6
**vs** [1] - 1:5

**W**

**wait** [1] - 31:4
**waived** [2] - 6:2, 21:12
**Wal** [1] - 23:2
**Wal-Mart** [1] - 23:2
**Walker** [5] - 6:10, 12:18, 12:20, 22:22, 23:22
**wash** [1] - 19:17
**washers** [1] - 24:4
**washing** [8] - 18:23, 18:24, 19:6, 19:11, 19:12, 19:13, 20:16, 20:18
**water** [1] - 20:7
**weighs** [1] - 12:20

**WEINROTH** [1] - 1:17
**welcome** [1] - 3:19
**Whirlpool** [1] - 10:14
**WHITAKER** [40] - 2:8, 4:8, 5:10, 7:23, 9:3, 9:8, 13:10, 13:13, 13:15, 13:17, 13:20, 13:24, 16:1, 16:16, 17:12, 17:19, 17:24, 18:9, 20:20, 21:6, 21:20, 22:1, 23:20, 25:23, 26:22, 27:3, 29:1, 29:18, 29:22, 30:9, 30:14, 30:17, 30:22, 31:5, 31:13, 31:20, 31:23, 31:25, 32:12, 32:17
**Whitaker** [4] - 4:7, 5:8, 7:22, 15:25
**whole** [1] - 12:21
**withdrawing** [1] - 6:23
**withhold** [1] - 23:14
**witnesses** [2] - 10:1, 11:13
**woods** [2] - 13:3, 13:5
**WOODS** [2] - 2:9, 4:10
**Woods** [1] - 4:9
**words** [2] - 16:16, 27:24
**works** [1] - 9:24
**wrangling** [1] - 9:21
**writing** [1] - 28:19
**written** [1] - 28:12

**Y**

**year** [2] - 31:4, 31:6
**years** [1] - 29:10

# EXHIBIT B

# Holland & Knight

2099 Pennsylvania Avenue, N.W., Suite 100 | Washington, DC 20006 | T 202.955.3000 | F 202.955.5564
Holland & Knight LLP | www.hklaw.com

Victoria Hao
202 419 2522
victoria.hao@hklaw.com

October 30, 2009

<u>VIA EMAIL AND REGULAR MAIL</u>               <u>VIA EMAIL ONLY</u>

Mark L. Whitaker, Esq.                          Rodger D. Smith II, Esq.
James M. Woods, Esq.                            Andrew C. Mayo, Esq.
Brian K. Andrea, Esq.                           Morris Nichols Arsht & Tunnell LLP
HOWREY LLP                                      1201 North Market Street
1299 Pennsylvania Ave NW                        Wilmington, Delaware  19801
Washington, DC 20004-2402                       Tel:  (302) 351-9327
Tel:  (202) 783-0800                            RSmith@mnat.com
WhitakerMark@howrey.com                         AMayo@mnat.com
WoodsM@howrey.com
AndreaB@howrey.com

            Re:    <u>*LG Electronics, Inc. v. ASKO Appliances Inc. et al.*, Case No. 08-828-JAP</u>

Dear Counsel:

        Enclosed please find the Supplemental Response of Plaintiff to Defendants' First
Common Set of Interrogatories.

        As always, if you have any questions about the case, please contact us.

                                    Regards,

                                    Holland & Knight LLP

                                    /s/ Don Monin for
                                    Victoria Hao

Enclosure

# 8939580_v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LG ELECTRONICS, INC.,                    )
                                         )
                Plaintiff,               )
                                         )
v.                                       )
                                         )    C. A. No. 08-828-JAP
ASKO APPLIANCES, INC. f/k/a AM           )
APPLIANCE GROUP, INC.; ASKO              )    **JURY TRIAL DEMANDED**
APPLIANCES AB; AND DAEWOO                )
ELECTRONICS CORP.,                       )
                                         )
                Defendants.              )

## SUPPLEMENTAL RESPONSE OF PLAINTIFF LG ELECTRONICS, INC. TO DEFENDANTS' FIRST COMMON SET OF INTERROGATORIES

Pursuant to the agreement of the parties on October 15, before Judge Pisano, and in accordance with the Federal Rules of Civil Procedure, Plaintiff LG Electronics, Inc. ("Plaintiff" or "LG"), through its attorney, hereby supplements its objections and responses to Defendants ASKO Appliances, Inc. ("ASKO USA"), ASKO Appliances AB ("ASKO AB"), and Daewoo Electronics Corp.'s ("Daewoo") (collectively "Defendants") Interrogatories.

LG further recognizes that all parties have a continuing obligation to supplement disclosures and responses to discovery, as necessary, in accordance with the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Based on information presently available, Plaintiff contends that ASKO Appliances Inc. f/k/a/ AM Appliance Group, Inc. ("ASKO USA") infringe one or more claim of each of U.S. Patent No. 6,460,382 ("the '382 patent"), U.S. Patent No. 6,914,363 ("the '363 patent"), U.S. Patent No.

6,510,716 ("the '716 patent"), U.S. Patent No. 7,418,843 ("the '843 patent") and U.S. Patent No.
7,380,424 ("the '424 patent") (collectively "the asserted patents") by making, using, offering to sell,
or selling within the United States, or importing into the United States ASKO Model Numbers
WL6511XXL, WL6511XXLW, WLRH6511XXLW, WL6511XXLRR, WL6511XXLPP,
WL6511XXLBB and WL6511XXLWRH washing machines, the models identified in ASKO USA's
responses or supplemental responses to Plaintiff's First Set of Interrogatories (No. 1) to Defendant
ASKO Appliances, Inc., the models identified in ASKO AB's responses or supplemental responses
to Plaintiff's First Set of Interrogatories (No. 1) to Defendant ASKO Appliances AB, the models
identified in Daewoo's responses or supplemental responses to Plaintiff's First Set of Interrogatories
(No. 1) to Defendant Daewoo Electronics Corp., corresponding, prior and successor models of the
referenced models, and each washing machine incorporating similar components or operating in a
similar manner as the referenced models ("Accused Instrumentalities").

LG further responds that: based on information presently available, Plaintiff contends that
each the Accused Instrumentalities having a motor, driving unit and/or support unit for the motor
or driving unit, infringes and meets each element of each of the following: (1) claims 1-4, 7-9, 14-
15, 20, 23-24, and 26-29 of the '382 patent, (2) claims 1-7, 10, 14 and 18-19 of the '363 patent, (3)
claims 1-2, 8, 24-26, 28, 45, 47 and 48 of the '716 patent, (4) claims 19-20, 22-25, 27-28, 43-45, 47-
49, 51, 53-57, 59, 61-70, 72-88 of the '843 patent, and (5) claims 1-13, 16-22, 24-36 of the '424
patent (collectively "the asserted claims"). LG further responds that: based on information
presently available, Plaintiff contends on information and belief that each limitation in each of
the asserted claims is literally present in each of the Accused Instrumentalities.

It should be noted that LG has not fully completed its investigation of the facts relating to
this case, has not fully completed its discovery in this action and has not completed its

preparation for trial. Accordingly, all of the answers contained herein are based only upon such information as is presently available to and specifically known to LG. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses herein set forth. The following responses are given without prejudice to LG's right to produce evidence of any subsequently discovered fact or facts that LG may later recall. LG accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are made. The responses contained herein are made in a good-faith effort, but should in no way be to the prejudice of LG in relation to further discovery, research or analysis.

## **LIST OF RESPONSIVE DOCUMENTS**

To date, none of Defendants have produced technical specifications, schematics, Bill of Materials or training manuals of the Accused Instrumentalities. In particular, ASKO Appliances AB has not produced any technical information on the Accused Instrumentalities; ASKO Appliances Inc. has produced only service guides of ASKO WL 6511XXLW and WL6511XXLT; Instead, Defendant ASKO Inc. and Defendant ASKO AB respectively have stated that "none of ASKO's current employees are knowledgeable about the creation, development, and implementation of the "Direct drive motor." Without these materials, any list of documents in support of LG's Infringement Contentions under L.Pat.R. 3-1 will be incomplete.

Based upon information currently available, the following documents contain relevant information in support of Plaintiff's Infringement Contentions as served upon Defendants on July 17, 2009, and bear the following Bates numbers:

3

ASKOAB00001-ASKOAB00067,

ASKOAPPINC0000001-ASKOAPPINC000134,

LGE0001-LGE0013,

PLAINTIFF00009-PLAITNIFF000029,

PLAINTIFF00030-PLAITNIFF000058,

PLAINTIFF00059-PLAITNIFF000078,

PLAINTIFF00079-PLAITNIFF000103,

PLAINTIFF00104-PLAITNIFF000131,

PLAINTIFF00132-PLAITNIFF000133,

PLAINTIFF00806-PLAITNIFF000879,

PLAINTIFF01068-PLAITNIFF001072,

PLAINTIFF01204-PLAITNIFF001215,

PLAINTIFF01220-PLAITNIFF001250,

PLAINTIFF01251-PLAITNIFF001282,

LG039086-LG039094;

LG039095-LG039112;

LG039113-LG039123;

LG039124-LG039148;

LG039149-LG039186;

LG039187-LG039203;

LG039204-LG039221;

LG039222-LG039232;

LG039233-LG039256;

LG039257-LG039292;

LG039293-LG039312;

LG039313-LG039409;

LG039410-LG039414; and

LG039415-LG039420.

LG also contends that infringing activities by ASKO USA, ASKO AB and Daewoo could be found in, *inter alia*, LG's Preliminary Infringement Disclosures and any supplement or amendment thereof, relevant documents identified in Plaintiff's and Defendants' respective initial disclosures and any supplement or amendment thereof, documents identified by Defendants under L. Pat. R. 3.4 (a).

Plaintiff further interposes its General Objections and specifically objects to the extent that Defendants seek information protected by the attorney-client privilege and/or the work product doctrine. Additionally, LG objects because it has not completed its investigation of the facts and documents relating to this case, has not completed discovery in this action, and has not completed its preparation for trial. LG also objects because the Court has not yet construed the claims of the Patents-in-Suit. Without waiving those objections, LG responds that it will produce additional responsive non-privileged documents in accordance with the Court's deadlines for expert discovery.

## GENERAL OBJECTIONS

The following General Objections are incorporated by reference into each of LG's following responses to Defendants' interrogatories. By responding to any of the interrogatories

or failing to specifically refer to or specify any particular General Objection in response to a particular Interrogatory, LG does not intend to waive any of these General Objections, nor admit or concede the appropriateness of any purported interrogatory or any assumptions contained therein.

1.      LG objects to the "Definitions" and "Instructions" contained in the Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and otherwise seek to impose a greater obligation on LG than that imposed by the Federal Rules of Civil Procedure, U.S. District Court for the Delaware Local Rules, and/or to the extent that they may contravene the Orders of the Court.

2.      LG objects to the Interrogatories to the extent that such interrogatories seek information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable protections.

3.      LG objects to Defendants' definition of the terms "LGE," "you," and "your" as referring to LG Electronics, Inc., its past or present officers, directors, agents, employees, consultants, attorneys, and other acting or purporting to act on its behalf, its predecessors, and successors, and parents, affiliated, related and subsidiary companies of LG Electronics, Inc., to the extent that that such past or present officers, directors, agents, employees, consultants, attorneys, and other acting or purporting to act on its behalf, its predecessors, and successors, and parents, affiliated, related and subsidiary companies, are not under the control of LG, and any statements made thereby are not therefore not binding on LG.

4.      LG objects to each interrogatory as overly broad, unduly burdensome and oppressive to the extent that it purports to require LG to search LG facilities and inquire of LG employees other than those facilities and employees that would reasonably be expected to have

responsive information. LG's responses are based upon (1) a reasonable search, given the time allotted to LG to respond to the requests, of facilities and files that could reasonably be expected to contain responsive information and (2) inquiries of LG employees and/or representatives who could reasonably be expected to possess responsive information. Further, these responses are limited to and are applicable only to documents and other information which LG's counsel has been able to ascertain and locate as of the date hereof. LG expressly reserves the right to use, rely upon, and to offer into evidence any and all documents and other information responsive to disclosure requirements, whether or not presently identified or produced, if the documents or other information have not been obtained by counsel and deemed responsive by counsel as of the date of this response, or if the responsiveness of the documents or other information has been overlooked in good faith, or if an objection is interposed to producing a document or other information.

5.      LG objects to Defendants' Interrogatories to the extent that such interrogatories seek information or the production of information or documents unrelated to this litigation.

6.      LG objects to Defendants' Interrogatories to the extent that such interrogatories seek information or documents outside of LG's possession, custody and/or control.

7.      LG objects to Defendants' Interrogatories to the extent that the information sought is more readily available and/or more appropriately obtainable through other means that are less burdensome or more appropriate than these Interrogatories.

8.      By responding to Defendants' Interrogatories, LG does not waive or intend to waive, but expressly reserves, all of its statements, reservations, and objections, both general and specific, set forth in these responses, even though LG may in some instances produce documents or disclose information over the statements, reservations and objections contained herein.

9.     These General Objections are deemed to be continuing objections throughout the responses that follow, regardless if they are expressly referred to therein.  Stating additional or other specific objections in any of the following responses does not constitute a waiver, alteration, or limitation of these General Objections.

Plaintiff incorporates by references all of its general and specific objects to Defendants' First Set of Requests for Production of Documents and Things (Nos. 1-58) to Plaintiff LG Electronics Inc. as if the same had been restated herein.

                                        POTTER ANDERSON & CORROON LLP

OF COUNSEL:                             By:   _/s/ Victoria Hao_
                                              Richard L. Horwitz (#2246)
Sunwoo Lee                                    David E. Moore (#3983)
Jon B. Crocker                                D. Fon Muttamara-Walker (#4646)
Victoria D. Hao                               Hercules Plaza, 6th Floor
HOLLAND & KNIGHT LLP                          1313 N. Market Street
2099 Pennsylvania Avenue, N.W.                P. O. Box 951
Washington, DC 20006-6801                     Wilmington, DE  19899
Tel:  (202) 955-3000                          Tel:  (302) 984-6000
sunwoo.lee@hklaw.com                          rhorwitz@potteranderson.com
victoria.hao@hklaw.com                        dmoore@potteranderson.com
jon.crocker@hklw.com                          fmuttamara-walker@potteranderson.com

                                        *Attorneys for Plaintiff*
Dated:   October 29, 2009               *LG Electronics Inc.*

## CERTIFICATE OF SERVICE

I, Deborah Peters Langley, an employee at Holland & Knight LLP, hereby certify that on

October 29, 2009, a true and correct copy of the within document was caused to be served on the

attorney of record at the following addresses as indicated:

## VIA ELECTRONIC MAIL

Rodger D. Smith II, Esq.
Andrew C. Mayo, Esq.
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801
Tel: (302) 351-9327
RSmith@mnat.com
AMayo@mnat.com

Mark L. Whitaker, Esq.
James M. Woods, Esq.
Brian K. Andrea, Esq.
HOWREY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004-2402
Tel: (202) 783-0800
WhitakerMark@howrey.com
WoodsM@howrey.com
AndreaB@howrey.com

*/s/ Deborah Peters Langley*
Holland & Knight LLP
2099 Pennsylvania Ave NW Suite 100
Washington, DC 20006

9

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-828 (JAP) |
| | ) | |
| ASKO APPLIANCES, INC. f/k/a AM | ) | |
| APPLIANCE GROUP, INC.; ASKO | ) | |
| APPLIANCES AB; AND DAEWOO | ) | |
| ELECTRONICS CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Having considered Plaintiff's Letter Application to Limit Defendants' Interrogatories (D.I. 92) and Defendants' Motion to Compel Production from Plaintiff LG Electronics, Inc. Under Rule 37 of the Federal Rules of Civil Procedure (D.I. 101), and having heard argument on Defendants' Motion on October 15, 2009, it is hereby ORDERED this ___ day of _____, 2009, as follows:

1.    Plaintiff LG Electronics, Inc. ("LG") shall identify those documents which support each of its Infringement Contentions under L.Pat.R. 3.1; and

2.    LG shall continue to timely supplement its Infringement Contentions with supporting documents as discovery proceeds in this case.

_____
United States District Judge