**Not for publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LG ELECTRONICS, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08-828 (JAP) |
| v. | : | |
| | : | **OPINION** |
| ASKO APPLICANCES, INC. f/k/a AM APPLICANCE GROUP, INC., ASKO APPLICANCES AB, DAEWOO ELECTRONICS CORP., DAEWOO ELECTRONICS AMERICA, INC., and DIGITAL SYMPHONY CORP., | : : : : : : | |
| Defendants. | : : | |

PISANO, District Judge:

Presently before the Court is plaintiff LG Electronics, Inc.'s ("LGE") motion to dismiss counts IV-IX of defendant Daewoo Electronics Corp.'s ("Daewoo") counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Daewoo seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., the patent laws of the United States, 35 U.S.C. § 1, et seq., the Sherman Act, 15 U.S.C. § 2, et seq., the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, et seq., the District of Columbia's Consumer Protection Procedures Act, D.C. Code §§ 28-3901, et seq., and common law. For the reasons that follow, the Court finds that Daewoo's claims are adequately pled to state a cause of action and LGE's motion is denied.

**I.   Background[1]**

---

[1]   In addressing LGE's motion to dismiss Daewoo's counterclaims, the Court must accept as true the allegations contained in Daewoo's Amended Answer, Affirmative Defenses and Counterclaims ("Amended Answer"). *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996). Accordingly, unless otherwise noted, the facts recited herein are taken from

Case 1:08-cv-00828-JAP   Document 213   Filed 03/29/10   Page 2 of 8

The facts of this case are well known to the parties; therefore, only those relevant to the instant motion are set forth herein. On November 5, 2008, LGE, a manufacturer of direct drive frontloading washing machines, filed this action alleging infringement of five patents[2] by ASKO Applicances, Inc., ASKO Appliance Group, Inc., ASKO Cylinda AB, ASKO Appliances Holding AB, Antonio Merloni SPA, and Daewoo Electronics Corp. On November 9, 2009, LGE filed its First Amended Complaint adding Daewoo Electronics America, Inc., and Digital Symphony Corp. as defendants.

On July 17, 2009, Daewoo filed its Amended Answer denying that it infringed the patents-in-suit, asserting numerous affirmative defenses, and bringing counterclaims that seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. (Counts I, II, and III), the patent laws of the United States, 35 U.S.C. § 1, et seq. (Counts I,II, and III), the Sherman Act, 15 U.S.C. § 2, et seq. (Count IV), the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, et seq. (Count V), the District of Columbia's Consumer Protection Procedures Act, D.C. Code §§ 28-3901, et seq. (Count VI), and common law (Counts VII, VIII, and IX).

Daewoo alleges that LGE acted in an anticompetitive manner when it obtained the patents-in-suit by perpetrating a fraud on the USPTO. Daewoo contends that LGE was aware of prior art references, which it failed to disclose, when prosecuting four of the five patents-in-suit. Specifically, LGE failed to disclose four prior art references that had previously been identified

---

the Amended Answer, and do not represent this Court's factual findings.

[2]  The patents-in-suit are United States Patent No. 6,460,382 (the "382 Patent) entitled "Structure of Driving Unit in Drum Type Washing Machine" issued by the United States Patent and Trademark Office (the "USPTO") on October 8, 2002; United States Patent No. 6,510,716 (the "716 Patent") entitled "Structure of Driving Unit in Drum Type Washing Machine" issued by the USPTO on January 28, 2003; United States Patent No. 6,914,363 (the "363 Patent") entitled "Structure of Driving Unit in Drum Type Washing Machine" issued by the USPTO on July 5, 2005; United States Patent No. 7,380,424 (the "424 Patent") entitled "Drum Type Washing Machine" issued by the USPTO on June 3, 2008; and United States Patent No. 7,418,843 (the "843 Patent) entitled "Drum Type Washing Machine" issued by the USPTO on September 2, 2008. First Amended Complaint ¶¶ 13-17.

2

by the USPTO and eight prior art references that had previously been identified by the Japanese Patent Office (the "JPO") when prosecuting the 716 Patent, the 424 Patent, and the 843 Patent despite those patents having similar limitations to the patent applications rejected based upon the prior art. Daewoo also alleges that LGE intentionally failed to disclose the prior art references identified by the JPO when prosecuting the 363 Patent. Daewoo asserts that LGE's failure to disclose the prior art was not a mere oversight but instead was done with the intent to deceive the USPTO. Daewoo contends that but for LGE's fraudulent behavior the 363 Patent, the 716 Patent, the 424 Patent, and the 843 Patent applications would have been rejected based upon prior art. As a result of the fraudulently obtained patents, LGE has been able to take advantage of an unlawful monopoly in the frontloading washing machine market.

**II.      Standard of Review**

Where a complaint alleges "fraud or mistake," a party is required to plead "with particularity" the circumstances that constitute the fraud or mistake. Fed. R. Civ. P. 9(b). "Rule 9(b) serves to give defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). The rule requires a party to plead with particularity facts supporting the elements of fraud. *Id.* Thus, in order to successfully plead fraud under Rule 9(b), a plaintiff must offer "some precision and some measure of substantiation." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990). Rule 9(b) does not require an "exhaustive catalog of facts" it merely requires "sufficient factual specificity to provide assurance that plaintiff has" investigated and reasonably believes that a fraud has occurred. *Resource Ventures, Inc. v.*

3

*Resources Management Intern., Inc.*, 42 F.Supp. 2d 423, 441 (D. Del. 1999). Further, prior to discovery, in situations where the evidence of fraud is "particularly within the defendant's knowledge or control" the requirement of specificity may be relaxed. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418.

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Recently, the Supreme Court refashioned the standard for addressing a motion to dismiss under Rule 12(b)(6). *See, Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1969 (2007). The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 1964-65 (internal citations omitted); *see also, Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)..." *Twombly*, *supra*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A complaint will be dismissed unless it "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"*Id.* at 1949 (quoting *Twombley*, *supra*, 127 S. Ct. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 2009 WL 2501662, 5 (3d Cir. August 18, 2009) (citations omitted).

### III. Analysis

#### A. Count IV – Violation of 15 U.S.C. § 2

The Supreme Court has held that a patent infringement suit based upon a patent obtained by fraud may violate the Sherman Act provided all "other elements for a § 2 case are present." *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corporation*, 86 S. Ct. 347, 349; 350 (1965).  A plaintiff who brings an infringement suit against a competitor may be subject to liability for violation of the antitrust laws "if the alleged infringer (the antitrust plaintiff) proves (1) that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, [] or (2) that the infringement suit was 'a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'"  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (internal citation omitted).  The term "fraud" as used in *Walker Process* has been defined by the Federal Circuit as

> (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.
>
> *Id.* at 1069-70 (quoting *Norton v. Curtiss*, 433 F.2d 779, 792-94 & n. 12 (Fed. Cir.

1970)) (internal citations omitted).

The *Walker Process* Court stated that because patents, by their nature, are an exception to the rule against monopolies the public has an interest in "seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct." *Walker Process*, *supra*, 86 S. Ct. at 350 (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 65 S. Ct. 993, 998 (1945)).  Therefore, proof of fraud is sufficient to strip a party asserting its rights under a patent of "its exemption from the antitrust laws." *Id.* While "[a] mere failure to cite a reference to the PTO will not suffice" to invoke the Sherman Act, an intentional omission of prior art with the purpose to deceive will support an antitrust claim. *Nobelpharma AB*, *supra*, 141 F.3d at 1071; s*ee Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1137, 1347 (Fed. Cir. 2007).

Daewoo has pled facts sufficient to satisfy Federal Rule of Civil Procedure 9(b) by identifying "the date, place or time of the fraud" and by including other information that "inject[s] precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). Daewoo has pled that 1) LGE misrepresented a material fact when it failed to disclose the four prior art references identified by the USPTO and the eight prior art references identified by the JPO; 2) the omission was made with the intent to deceive; 3) the USPTO office relied upon the omission when it issued four of the patents-in-suit; and 4) LGE caused injury by its willful omission of the prior art references.  Amended Answer ¶¶ 41; 47; 50; 65; 67; 76; 85.  Daewoo has specifically named the four prior art references identified by the USPTO and the eight prior art references identified by the JPO allegedly omitted by LGE in the patent applications at issue.  Amended Answer ¶¶ 36-39; 42-45; 48; 52; 56-59; 60-63; 68-75; 77-84.  Daewoo has also included the time and place of the alleged fraud, namely, the time of the patent applications and the USPTO.  Further, Daewoo included other

information which "inject[s] precision and some measure of substantiation" to the allegations of fraud when it identified the party responsible for the fraud as "one or more individuals associated with LGE, including its counsel, who owed a duty of candor to the USPTO."  Amended Answer ¶¶ 40; 46; 49; 64; 66; 75; 77; 84.

When the defendant in a patent infringement case alleges an antitrust violation based upon a fraudulently obtained patent it must satisfy the requirements of 15 U.S.C. § 2 as well as show fraud on the USPTO.  *Walker Process*, *supra*, 86 S. Ct. 347 at 350.  In order to prevail on a §2 claim, the party must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Grinnell Corp.*, 86 S.Ct. 1698, 1704 (1966).  Generally, a relevant market can only be defined "after a factual inquiry into the commercial realities faced by consumers."  *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).  Therefore, courts will not usually define a relevant market on a motion to dismiss.  *Foundation for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001) ("Market definition is a highly fact-based analysis that generally requires discovery").

Here, Daewoo has alleged sufficient facts to support its Sherman Act claim.  Daewoo has pled a viable relevant market; specifically the "direct drive frontload washing machine" market located within "the United States." Amended Answer ¶ 110.  Alternatively, Daewoo pleads the relevant market as "frontload washing machines in the United States."  Amended Answer ¶ 121. Daewoo has also pled that LGE has monopoly power within the relevant market and that LGE has acquired monopoly power through means other than production of "a superior product, business acumen, or historic accident."  *Grinnell Corp.*, *supra*, 86 S.Ct. at 1704.  Daewoo alleges

that LGE enjoys a 50-75% market share of all direct drive frontloading washing machines sold in the United States and that it has maintained this market share through its "anticompetitive posture." Amended Answer. at ¶ 119; 120.

### B. Counts V-IX

LGE bases its motion to dismiss counts V-IX of Daewoo's counterclaims on Daewoo's failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b); its failure to plead a viable relevant market; and its failure to show "a dangerous probability of success in achieving monopoly power." Brief in Support of LGE's Motion to Dismiss at 3-9. As discussed above, this Court finds that Daewoo's allegations of fraud meet the requirements of Rule 9(b). Additionally, the Court holds that Daewoo has identified a viable relevant market. Finally, given the allegation that LGE commands a 50-75% market share in the direct drive frontloading washing machine market, it is clear that not only is there "a dangerous probability of success in achieving monopoly power," LGE has already achieved monopoly power in the defined market. Therefore, LGE's motion to dismiss counts V-IX is denied.

## IV. Conclusion

For the reasons above, LGE's motion to dismiss counts IV-IX of Daewoo's counterclaims is denied. An appropriate Order accompanies this opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: March 29, 2010