IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG ELECTRONICS, INC., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 08-828-RGA |
| | : | |
| ASKO APPLIANCES, INC. f/k/a AM | : | |
| APPLIANCE GROUP, INC.; ASKO | : | |
| APPLIANCES AB; DAEWOO | : | |
| ELECTRONICS AMERICA, INC., and | : | |
| DIGITAL SYMPHONY CORP., | : | |
|     Defendants. | : | |

Richard K. Hermann, Esq., Mary B. Matterer, Esq., Wilmington, DE; Andrew Chanho Sonu, Esq., Richard L. Stroup, Esq., Anand K. Sharma, Esq., Jennifer K. Robinson, Esq., Washington, DC, Attorneys for Plaintiff.

Rodger D. Smith II, Esq., Benjamin J. Schladweiler, Esq., Wilmington, DE; Mark L. Whitaker, Esq., William S. Foster, Jr., Washington, DC; Jennifer C. Tempesta, Esq., Jeremy Merling, Esq., New York, NY, Attorneys for Defendants.

MEMORANDUM OPINION

June 21, 2012

1



ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is LG's Motion to Enforce Settlement Agreement (D.I. 565, 566),

Defendants' Answering Brief in Opposition (D.I. 598, 599), and portions of LG's Reply Brief

(D.I. 638).[1] For the reasons discussed, LG's Motion is denied.

## BACKGROUND

This case, alleging patent infringement via drum washing machines made by Defendant

Daewoo Electronics Corp., went on a brief hiatus in December, 2011, when the parties reported

to the Court that they had settled the action in its entirety and the Court dismissed the action

without prejudice to the right to reopen the action if the settlement was not consummated within

sixty days. (D.I. 552). LG and Daewoo agreed to a "Memorandum of Understanding concerning

an agreement regarding LG v. Daewoo Washing Machine Patent Dispute" dated October 31,

2011. (D.I. 566, Ex. 1; D.I. 599, Ex. 1). The MOU provided Daewoo a nonexclusive license in

LG's patents in dispute through December 31, 2015, in the United States for past and future

Daewoo and Asko washing machines manufactured by Daewoo; in Europe for past and future

Daewoo washing machines; and in Korea for past Daewoo washing machines. *Id.* The MOU

also provided that Daewoo would pay a one-time royalty payment of 2.5 billion won

"corresponding to a 4.1% royalty of Net Sales Price." *Id.* "[A]ll legal disputes between both

parties" would be terminated. *Id.*

After signing the MOU and notifying the Court that the parties were contemplating

settlement, LG and Daewoo continued to negotiate. Negotiations fell apart, and shortly before the

---

[1] The Court granted Defendants' motion to strike portions of LG's reply brief on LG's motion to enforce the settlement agreement. (D.I. 638, 646, 652).

2

end of the sixty days, Daewoo advised Plaintiff LG Electronics, Inc. and the Court that the parties were "unable to enter into a final settlement agreement." (D.I. 556). LG advised the Court that it disagreed and intended to enforce the purported settlement agreement. (D.I. 555).

## DISCUSSION

### A. Legal Standard

A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. *See Leonard v. University of Delaware,* 204 F.Supp.2d 784, 786 (D.Del. 2002). A motion to enforce a settlement agreement closely resembles a motion for summary judgment and employs a similar standard of review. *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F.Supp.2d 457, 461 (D. Del. 2008). Therefore, a court may grant enforcement only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary enforcement; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B. Decision

When parties agree to settle a lawsuit, a binding contract is deemed to have been created. *Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, 2009 WL 1033651, at *5 (D. Del.

3

Apr. 16, 2009). To determine whether a contract was formed, the parties' "overt manifestation of assent – not subjective intent – controls" the result. *Id.* The court must determine whether the settlement agreement at issue is an enforceable contract under Delaware law.[2] *Id.* "Under Delaware law a contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms." *Id.* (internal quotation and citation omitted).

In other words, an enforceable contract exists where a reasonable person would conclude that the parties had reached a definite and final agreement on all essential terms. *Id.* The test for determining whether all essential terms have been agreed upon is "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that the agreement concluded the negotiations." *Parker-Hannifin*, 589 F.Supp.2d at 461. Therefore, whether an enforceable settlement exists requires a two-step analysis: first, whether the requisite offer, acceptance, and consideration were present; and second, whether an objective reasonable negotiator, in light of all the circumstances, would conclude that the parties were bound. *Id.* at 461-62. The second inquiry is

---

[2] Daewoo argues that because LG did not apply Korean law, which Daewoo asserts is the correct choice of law, LG does not meet its burden of proving a settlement agreement was reached. However, Daewoo fails to show how Korean law might conflict with Delaware law. Without indication that the proffered legal regimes actually conflict on a relevant point, the choice-of-law dispute is not properly before this Court. *See In re Teleglobe Communications Corp.*, 493 F.3d 345, 358 (3d Cir. 2007). As Daewoo has not informed the Court of a conflict between Korean and Delaware law and cites Delaware law almost exclusively (with few Korean laws noted), this Court relies on Delaware authority in reaching its conclusions. *See id.*

a case-by-case inquiry without any mechanical guidelines. *Id.* at 462-63.

The parties do not appear to dispute that the MOU was subject to the requisite offer, acceptance, and consideration. For purposes of this analysis, those requirements are presumed to be satisfied. As for the second step, whether an objective reasonable negotiator would conclude that the parties were bound, it is undisputed that the MOU did not resolve all the issues between the parties. (D.I. 566 at 2-3; D.I. 598 at 14). The primary issues remaining were whether the 4.1% royalty mentioned in the MOU would apply to sales outside the MOU's scope, specifically: Daewoo products retailed under names other than Daewoo and Asko ("OEM brands"); Daewoo products for regions other than the United States, Europe, and Korea; and products sold after the MOU terms expired in 2015. The patents in suit were issued between 2002 and 2008. (D.I. 1-1 through 1-5); 35 U.S.C. § 154. LG characterizes these issues as nonessential, while Daewoo characterizes them as material terms upon which the parties had not agreed. (D.I. 566 at 8-9; D.I. 598 at 14-17).

While negotiating the MOU, the parties discussed the extent to which the MOU would cover OEM brands other than ASKO, and regions such as China, India, Australia, and Japan. LG noted that these categories would require an additional royalty. (D.I. 599, Ex. 4). A later draft of the MOU, sent from LG to Daewoo on the eve of signing, proposed that for products and regions out of the MOU's scope, "when negotiations for revising or supplementing the contents of the license contract are required by request of either party, both companies shall be engaged in the negotiations sincerely based on mutual confidence." *Id.* Ex. 6. The draft MOU circulated just a few hours later, and the final MOU, did not address these products and regions at all. *Id.* Ex. 5, Ex. 1.

5

The parties continued to negotiate licensing other OEM brands in other regions after the

MOU was signed. LG proposed a 4.1% "patent royalty rate" for practice of the patents outside of

the scope of the MOU in its first "draft settlement agreement," pointing to the MOU's note that

the lump sum royalty was "comparable to 4.1% royalty of Net Sales Price." *Id.* Ex. 8 at 1, 8, 10.

In response, Daewoo used the 4.1% to define only how the lump sum was derived, and did not

apply it to practice of the patents outside of the MOU's original scope. *Id.* Ex. 9, Ex. 13.

Daewoo also suggested including a provision for renegotiation after 2015. *Id.* Ex. 13. LG

responded that its proposal was consistent with the MOU and could not be changed. *Id.* Ex. 15,

Ex. 16.

The missing terms for licensure for other OEM brands, products sold in other regions, and

products sold after 2015, are essential terms that would lead a reasonable negotiator to conclude

that the MOU was not an agreement on all of the essential terms. If the MOU were the final

agreement, Daewoo would have no certainty as to whether it would be litigating against LG

upon expiration of the MOU in 2015 (with several years left on the patents), about products not

branded Daewoo or Asko, or in a region other than Korea, the United States, and Europe. (D.I.

598 at 14). These terms are much more significant than the missing terms found to be

nonessential in *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282 (Del. Ch. 2004), and *Parker-*

*Hannifin*. In *Loppert*, all that was unresolved was particular draft language and boilerplate terms.

865 A.2d at 1285, 1289. In *Parker-Hannifin*, the parties had not agreed on the number of units

or sales volumes to be licensed, field of use terms, the license's territorial scope, or

representations and warranties. 589 F.Supp.2d at 463-64.

Here, the parties negotiated the terms at issue before the MOU was signed, showing these

6

terms were essential, unlike in *Parker-Hannifin* where the terms at issue were only brought up after resolution of more significant disputes, indicating the party objecting to enforcement did not consider these terms essential. *See* 589 F.Supp.2d at 463-64. Throughout negotiations, Daewoo repeatedly requested clarification or favorable terms for licensing other OEM brands and other geographic regions, and LG repeatedly adhered to its 4.1% proposal, showing the terms are important to both parties.

The words of the MOU itself also indicate it was simply an agreement to agree, particularly when viewed in the light most favorable to Daewoo. "[W]here 'commercial parties draft a term sheet that is intended to serve as a template for a formal contract, the law of this state, in general, prevents the enforcement of the term sheet as a contract if it is subject to future negotiations because it is, by definition, a mere agreement to agree.'" *Pharmathene, Inc. v. SIGA Techs., Inc.*, 2010 WL 4813553, at *7 (Del. Ch. Nov. 23, 2010) (internal citation omitted). The MOU is formally titled "the Memorandum of Understanding concerning an agreement regarding LG v. Daewoo Washing Machine Dispute." (D.I. 566, Ex. 1). Using Daewoo's translation, the MOU also provides "We are hoping that [both companies] will complete making a license contract including specific contract terms according to this MOU as quickly as possible." (D.I. 599, Ex. 1). The Court reads these clauses to indicate the MOU is an understanding about a complete agreement that is yet to be completed, rather than an enforceable agreement in and of itself.

An objective reasonable negotiator, in light of the parties' negotiations, the words in the MOU, and the practical implications of the missing terms, would not conclude that the parties were bound by the MOU. The Court need not reach Defendants' further arguments that disputes over confidentiality, the missing terms of payment, termination of the litigation, and controlling

7

jurisdiction, indicate that the MOU is not a final agreement.

Because LG's Motion is denied, LG's request for attorneys' fees is also denied, as moot.

An appropriate order will be entered.